# IN THE SUPREME COURT OF IOWA

No. 12–0729

Filed December 5, 2014

Amended February 10, 2015

**STATE OF IOWA,**

Appellee,

vs.

**PATRICK MICHAEL DUDLEY,**

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Marion County, Darrell J. Goodhue, Judge.

The State seeks further review of a court of appeals decision reversing a defendant's conviction because the district court allowed expert testimony vouching for the victim's credibility. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Kent Simmons, Davenport, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, Edward W. Bull, County Attorney, and Nicole L. Olson, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

This case involves two charges of sexual abuse in the second degree in violation of Iowa Code section 709.3(2) (2009). A jury convicted the defendant of these charges. On appeal, defendant contends he is entitled to have the charges dismissed because the State failed to comply with a plea bargain agreement. He also contends, if we do not dismiss the charges, he is entitled to a new trial because certain expert witnesses vouched for the credibility of the victim, the district court admitted hearsay statements from the victim into the record, and the district court did not allow him to use a prior conviction of a witness to impeach that witness. We transferred the case to our court of appeals. The court of appeals held the State did not violate the plea bargain agreement, but the defendant is entitled to a new trial on the ground an expert witness vouched for the credibility of the victim.

The State sought further review, which we granted. On further review, we agree with the court of appeals that the State did not violate the plea bargain agreement, but that the defendant is entitled to a new trial on the ground an expert witness vouched for the credibility of the victim. Therefore, we affirm the decision of the court of appeals and remand the case for a new trial. On retrial, the district court should not admit the victim's hearsay statements into the record and should revisit the use of the prior conviction consistent with this opinion.

**I. Background Facts and Proceedings.**

Patrick Dudley and his wife Kay lived in Northfield, Minnesota. In June 2010, Dudley and his wife planned a trip to Knoxville, Iowa, to visit a friend. The Dudleys took their ten-year-old granddaughter B.O. along for the trip. When the Dudleys arrived in Knoxville, all three individuals slept in one bedroom. The Dudleys slept on a mattress on the floor and

B.O. slept in a sleeping bag on the floor. B.O. alleged on the second night of the trip, after she and her grandparents went to bed, Dudley touched her vagina with his hand. B.O. alleged he did the same thing on the third night of the trip.

Dudley, his wife, and B.O. returned to Minnesota the next day. On the evening she returned home, B.O. told her mother that her grandfather had touched her vagina with his hand. B.O.'s parents called the police in Minnesota to report the abuse. The Minnesota authorities contacted the police in Knoxville to report the incident.

Later that month the child traveled to the Regional Child Protection Center at Blank Children's Hospital in Des Moines. Tammera Bibbins, a forensic interviewer, conducted an interview of B.O. The purpose of the interview was to determine if the authorities should continue their investigation. The interviewer recommended further investigation.

The State eventually charged Dudley with two counts of sexual abuse in the second degree. In September 2011, Dudley filed seven motions in limine, including motions to exclude expert testimonies of Bibbins and B.O.'s treating therapist, Mary Casey, and exclude the testimony of B.O.'s neighbor, Pat Korinek. On December 27, Dudley also filed a motion to dismiss the charges and enforce a pretrial plea agreement. The district court overruled all the motions at issue in this appeal.

Before trial, the county attorney made a plea offer to Dudley. The county attorney agreed to dismiss the charges if Dudley passed a polygraph test given by a certified test administrator. The county attorney also notified Dudley the offer would expire once the parties took B.O.'s deposition. Dudley initially refused to take a polygraph test and did nothing with the offer for more than sixty days. After months had

passed, the county attorney contacted Dudley to inform him he would be making a trip to Minnesota to interview B.O., and once he did, all plea offers were off the table. Dudley decided to take the polygraph test in Minnesota but did so after the county attorney made the trip to speak with B.O.

Dudley passed the Minnesota polygraph test and sent the results to the county attorney. Dudley did not inform the county attorney he had agreed to go forward with the test prior to the county attorney's trip to see the child. The county attorney only found out Dudley took the test after Dudley sent him the results of the exam. The county attorney agreed to look at the results but had concerns with the veracity of the results. Even with these concerns and Dudley's failure to inform the county attorney that he decided to take the test, the county attorney agreed to allow Dudley to take another exam in Iowa. Dudley did not pass the Iowa test.[1]

Dudley filed a motion arguing the court should enforce the plea agreement because he detrimentally relied upon the plea offer by waiving his Fifth Amendment right against self-incrimination and his Sixth Amendment right to a speedy trial. The district court denied Dudley's motion and the case proceeded to trial.

At trial, Casey, a board certified psychologist, testified she provided therapeutic treatment to B.O. Casey testified she diagnosed B.O. with posttraumatic stress disorder and generalized anxiety disorder. The court permitted Casey to testify regarding typical physical manifestations and symptoms of an individual suffering from posttraumatic stress

---

[1]The results of the Iowa polygraph test were not in the record before this court. The county attorney indicated Dudley did not pass the exam during the pretrial motion hearing.

because of sexual abuse. Her descriptions matched, almost exactly, the manifestations other witnesses had already testified B.O. was exhibiting. Casey then testified to the observations she made of B.O.'s symptoms and physical manifestations while she was treating the child. Casey testified she observed some "telltale" physical manifestations such as the child dressing in layers, cutting her hair, dressing "very boyish," and reacting to triggers such as seeing her grandfather's car. Casey concluded her testimony on direct examination with the following exchange with the county attorney:

> Q: Ma'am, based on your education, training, and experience, do you have an opinion to a reasonable degree of certainty in your field as to whether or not [B.O.]'s physical manifestations were consistent with a child suffering from sexual abuse trauma? A: Yes, they were consistent.

> Q: And do you have an opinion based on your line of work again, based on your credentials as to whether or not her symptoms were consistent with a child dealing with sexual abuse trauma? A: Yes, her symptoms were.

At trial, Bibbins testified to the type of interview she conducts with children who have made allegations of sexual abuse. Bibbins testified she conducted her interview with B.O. in the same manner. She also explained to the jury the concepts of coaching a child and suggestibility—using leading questions when interviewing the child. Bibbins testified B.O.'s "statement was consistent throughout the entire interview process." The county attorney also asked Bibbins to opine whether B.O.'s involvement with therapy was "problematic in the realm of coaching" to which Bibbins answered she "did not see it as problematic." Bibbins also testified she made recommendations for B.O. to receive therapy and cease all contact with Dudley.

Dudley also tried to exclude testimony regarding what B.O. had told the child's neighbor, Korinek, about the incident in Iowa. The

district court stated it would allow the testimony so long as the State established the statements qualified under the excited utterance exception to hearsay. At trial, B.O.'s mother testified that after her daughter told her about the incident the child went to bed. The next morning the mother called Korinek and told her about B.O.'s accusation. She asked Korinek to talk with B.O. about the trip with her grandparents. B.O.'s mother then sent her to the neighbor's home to deliver eggs.

Korinek testified B.O. was not her normal bubbly self when she arrived at the neighbor's home. Korinek further testified she asked the child what was wrong. B.O. began to cry and was very upset. Korinek testified she prompted the child to tell her what was wrong a few times before the child disclosed the incident to her. The State then asked Korinek what B.O. told her had happened that caused the child to be so upset. Over objection, the district court ruled the statements fell under the excited utterance exception and permitted Korinek to respond. Korinek testified B.O. told her Dudley had touched her vagina while they were in Iowa.

Lastly, Dudley filed a notice of his intent to introduce evidence of a prior criminal conviction of one of the State's witnesses, Michael Gannaway. During the course of the case, Dudley's sister-in-law and her boyfriend, Gannaway, were living with the Dudleys. Gannaway testified that while he was living in Dudley's home, Dudley disclosed to him that "he [Dudley] was guilty of what he was charged with and that as soon as it blew over, he was going to seek therapy or something like that." Around the same time this statement was made, the Dudleys asked Gannaway and Kay's sister to move out of the home. Dudley sought to introduce evidence to impeach Gannaway's credibility.

Gannaway was convicted of theft in Minnesota more than twenty years prior to the current trial. When asked about his criminal history during his deposition, Gannaway stated he had never been convicted of a crime. Dudley wanted to admit the crime of dishonesty and the denial during deposition to impeach Gannaway. The district court ruled it would not

> sustain the motion in limine on [the] 20-year-old misdemeanor. It's kind of like a speeding charge. I suspect if you got back in that and the record went long enough, he probably had a speeding charge and that's shown as a criminal charge too.

The State argued the statement in his deposition was an innocent mistake and did not rise to the level of perjury. The district court did not permit Dudley to impeach Gannaway with either the criminal charge or the statement in the deposition.

The jury found Dudley guilty on both charges. Dudley filed a notice of appeal. We transferred the appeal to our court of appeals. The court of appeals found the district court did not abuse its discretion in denying Dudley's motion to enforce the plea agreement because the offer was no longer valid at the time Dudley took the polygraph test. However, the court of appeals reversed and remanded the case for a new trial finding Casey's testimony amounted to an impermissible comment on B.O.'s credibility. After reaching that conclusion, the court of appeals did not address the other issues raised by Dudley's appeal. The State then filed this application for further review, which we granted.

**II. Issues.**

In this appeal, the issues as to whether the district court erred in failing to require the State to honor the plea agreement and whether the expert testimony amounted to an impermissible comment on B.O.'s

credibility are dispositive. However, because some of the issues raised by Dudley may reoccur on remand, we will address whether the court abused its discretion in admitting the neighbor's testimony as an exception to the hearsay rule and whether the court was correct in not allowing Dudley to impeach Gannaway's testimony with Gannaway's criminal conviction.

### III. Standard of Review.

When faced with a motion to dismiss as a sanction for the State's alleged repudiation of a plea agreement, the district court has the same limited discretion it has "when ruling on a motion to dismiss for failure to provide a speedy trial under Iowa Rule of Criminal Procedure [2.33(2)]." *State v. Hovind*, 431 N.W.2d 366, 368 (Iowa 1988). If the district court abused its limited discretion by finding the State did not repudiate the plea agreement, we will reverse its finding. *Id.*

We review hearsay rulings for correction of errors at law and will reverse the admission of hearsay evidence as prejudicial unless the contrary is shown. *State v. Elliott*, 806 N.W.2d 660, 667 (Iowa 2011). We review all other evidentiary rulings for an abuse of discretion. *Id.*

When the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable, an abuse of discretion occurs. *State v. Nelson*, 791 N.W.2d 414, 419 (Iowa 2010). When a ground or reason is based on an erroneous application of the law or not supported by substantial evidence, it is untenable. *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000).

**IV. Whether the District Court Abused Its Limited Discretion By Not Dismissing the Case Due to the State's Alleged Repudiation of the Plea Agreement.**

For a plea bargain agreement to be binding, the performance of the terms of the plea bargain agreement must be mutual. *Hovind*, 431 N.W.2d at 368. The State has no obligation to make available the anticipated benefits of a plea agreement when the defendant fails to perform his or her end of the bargain. *Id.* Furthermore, the State has the ability to withdraw from a plea agreement up until the time a defendant enters a guilty plea or until the defendant has taken action that amounts to a detrimental reliance on the agreement. *See State v. King*, 576 N.W.2d 369, 370 (Iowa 1998) (per curiam).

The State communicated to Dudley, prior to withdrawing the plea offer, that the county attorney was making a trip to Minnesota to interview B.O. and that once he made the trip, the offer would be off the table. Dudley did not take the test or advise the county attorney he was arranging to take the test prior to the time the county attorney made the trip. Accordingly, the State withdrew the plea agreement to dismiss the charges in exchange for a successful test prior to the time Dudley took his polygraph test. Additionally, because Dudley had not taken the test when the State withdrew the plea agreement, Dudley did not detrimentally rely on the plea agreement when he took the test. Therefore, the district court did not abuse its limited discretion by denying Dudley's motion to enforce the plea agreement.

**V. Whether the District Court Abused Its Discretion When It Found the Expert Witnesses' Testimony Did Not Amount to an Impermissible Comment on B.O.'s Credibility.**

**A. Applicable Legal Principles.** Iowa Rule of Evidence 5.702 permits expert opinion testimony "if . . . specialized knowledge will assist

the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony in child sexual abuse cases can be very beneficial to assist the jury in understanding some of the seemingly unusual behavior child victims tend to display. Veronica Serrato, *Expert Testimony in Child Sexual Abuse Prosecutions: A Spectrum of Uses*, 68 B.U. L. Rev. 155, 163 (1988). Juries may have misconceptions regarding how an abused child should behave. *Id.* at 160–62. A child may appear frightened on the stand or unwilling to testify. *Id.* The child's recollection of the events may seem inconsistent, or the child may have delayed reporting the abuse for quite some time. *Id.* An expert witness, such as a psychologist or social worker, can help the jury understand these behaviors and other behaviors common to children who have suffered sexual abuse trauma. *Id.* at 163.

In an early Iowa case in this area, the expert witness testified it was rare for children to lie about sexual abuse. *State v. Myers*, 382 N.W.2d 91, 91 (Iowa 1986). In *Myers*, we set forth the legal principles regarding expert testimony in child sexual abuse cases. We stated "experts will be allowed to express opinions on matters that explain relevant mental and psychological symptoms present in sexually abused children." *Id.* at 97. However, we acknowledged, "most courts reject expert testimony that either directly or indirectly renders an opinion on the credibility or truthfulness of a witness." *Id.*

We have consistently followed *Myers* in our subsequent case law. We have permitted an expert witness to testify regarding the "typical symptoms exhibited by a person after being traumatized." *State v. Gettier*, 438 N.W.2d 1, 6 (Iowa 1989). We held this testimony was admissible because it did not directly comment on whether the victim at issue had symptoms consistent with "rape trauma syndrome." *Id.* In a

later case, we allowed expert testimony to explain to a jury why children victims may delay reporting their sexual abuse. *State v. Payton*, 481 N.W.2d 325, 327 (Iowa 1992). Again, the expert witness avoided commenting directly on the child at issue and only testified generally about victims of sexual abuse. *Id.*

We have also analyzed expert witness testimony under the hearsay exception. Under a hearsay analysis, when the child makes statements for the purposes of diagnosis or treatment, those statements fall under the hearsay exception contained in Iowa Rule of Evidence 5.803(4). *See State v. Hildreth*, 582 N.W.2d 167, 169–70 (Iowa 1998) (holding a social worker treating the child was permitted to testify to statements the child made about the abuse, including the victim's identification of the perpetrator, because the statements were necessary to the treatment of ensuring the continued safety of the child). The child must make the statements to a trained professional for the purposes of diagnosis or treatment to be admissible under rule 5.803(4). *Id.* Even under a hearsay analysis, the experts did not couple their testimony of the statements made by the child, the identity of the abuser, and the events of the abuse with a professional opinion as to whether the child was truthful, had symptoms of sexual abuse trauma, or whether the symptoms of the child were consistent with child abuse. *See id.* at 169.

We see no reason to overturn this well-settled Iowa law prohibiting an expert witness from commenting on the credibility of a victim in a criminal sex abuse proceeding. Although we are committed to the liberal view on the admission of psychological evidence, we continue to hold expert testimony is not admissible merely to bolster credibility. *State v. Hulbert*, 481 N.W.2d 329, 332 (Iowa 1992). Our system of justice vests the jury with the function of evaluating a witness's credibility. *Id.* The

reason for not allowing this testimony is that a witness's credibility "is not a 'fact in issue' subject to expert opinion." *Id.* (quoting *Myers*, 382 N.W.2d at 97). Such opinions not only replace the jury's function in determining credibility, but the jury can employ this type of testimony as a direct comment on defendant's guilt or innocence. *Id.* Moreover, when an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on the testimony even though an expert cannot accurately opine when a witness is telling the truth. In our system of justice, it is the jury's function to determine the credibility of a witness. An abuse of discretion occurs when a court allows such testimony. *Id.*

We again reaffirm that we are committed to the legal principle that an expert witness cannot give testimony that directly or indirectly comments on the child's credibility. We recognize there is a very thin line between testimony that assists the jury in reaching its verdict and testimony that conveys to the jury that the child's out-of-court statements and testimony are credible. *Id.* We will now analyze the testimony in this case to determine whether the line was crossed.

**B. Testimony of Treating Therapist, Mary Casey.** The testimony at issue deals with Casey opining B.O.'s physical manifestations and symptoms were consistent with a child dealing with and suffering from sexual abuse trauma. We must determine whether the expert crossed the line by testifying in a manner that indirectly conveyed to the jury that the child was telling the truth.

One leading expert in the field notes allowing expert testimony that a child's symptoms are consistent with sexual abuse trauma is problematic because the symptoms do not prove someone abused the child. *See* Brett C. Trowbridge, *The Admissibility of Expert Testimony in*

*Washington on Post Traumatic Stress Disorder and Related Trauma Syndromes: Avoiding the Battle of the Experts by Restoring the Use of Objective Psychological Testimony in the Courtroom*, 27 Seattle U. L. Rev. 453, 474–79 (2003). Psychiatrists formulated a syndrome to describe the trauma suffered by sexually abused children. *Id.* at 474–77. This syndrome is called child sexual abuse accommodation syndrome (CSAAS) and its proponents urge it is representative of a common denominator of the most frequently observed behaviors of sexual abuse victims. *Id.* The psychiatrists developed the syndrome to give a diagnosis and provide better treatment to children suffering from these behaviors. *Id.* The psychiatrists did not develop the diagnosis of sexual abuse trauma or CSAAS to prove abuse occurs because the diagnosis *assumes* abuse has occurred. *Id.* at 475. Moreover, the identification of symptoms or physical manifestations of sexual abuse trauma in children is not consistent among professionals. *See* Mary Ellen Reilly, Note, *Expert Testimony on Sexually Abused Child Syndrome in a Child Protective Proceeding: More Hurtful than Helpful*, 3 Cardozo Pub. L. Pol'y & Ethics J. 419, 442 (2005) (explaining a "study of over 122 appellate court decisions involving expert testimony of child sexual abuse revealed sharp contradictions" (internal quotation marks omitted)).

To allow an expert witness to testify a child's physical manifestations or symptoms are consistent with sexual abuse trauma or CSAAS allows the expert witness to indirectly vouch that the victim was telling the truth because the expert opines the symptoms are consistent with child abuse. To put it another way, the expert is saying these symptoms mean the child suffered a sexual abuse trauma; therefore, the child must be telling the truth when he or she relates his or her story to the jury. It is the jury's function to determine if the victim is telling the

truth, not the expert witness's. Accordingly, the expert witness's testimony crossed the line when she testified B.O.'s physical manifestations or symptoms were consistent with sexual abuse trauma or CSAAS.

**C. Testimony of Forensic Interviewer, Tammera Bibbins.** The portion of testimony Dudley finds objectionable in Bibbins's testimony is her explanation of coaching and suggestibility. Bibbins stated B.O.'s "statement was consistent throughout the entire interview process." Dudley also finds objectionable Bibbins's recommendation for B.O. to receive therapy and cease all contact with Dudley. Finally, he finds objectionable her opinion that B.O.'s involvement in therapy was not problematic in the realm of coaching.

Bibbins is a forensic interviewer whose purpose in this matter was to gather facts for the police. She was not conducting her interview for purposes of diagnosis or treatment. However, Dudley does not claim the testimony should have been excluded because the testimony did not fall under Iowa Rule of Evidence 5.803(4), an exception to the hearsay rule. The only objection Dudley made was that this testimony vouched for B.O.'s credibility.

We need to break down each statement Dudley claims as objectionable to determine whether the State crossed the line. The first statement by Bibbins was that B.O.'s statements were consistent throughout the interview. We do not find this statement crossed the line. Bibbins was merely stating the fact that throughout the interview B.O. never changed her story as to the events with Dudley. The jury is entitled to use this information to determine the victim's credibility. This information gives the jury an insight into the victim's memory and knowledge of the facts. *See State v. Frake,* 450 N.W.2d 817, 819 (Iowa

1990) (stating a jury may consider a witness's memory and knowledge of facts in determining the witness's credibility). With this information as part of the evidence, the jury still had to decide if B.O.'s complaints against Dudley were credible.

The second statement by Bibbins was that she recommended B.O. receive therapy and stay away from Dudley. Bibbins based these recommendations on her opinion that she believed Dudley sexually abused B.O. This testimony crossed the line because she testified she believed B.O. was in fact sexually abused by Dudley; thus, indirectly vouching for her credibility.

The third statement dealt with her opinion that B.O.'s involvement in therapy was not problematic in the realm of coaching. We do not find this statement crossed the line. The gist of the statement is that participation in therapy, in and of itself, does not mean the therapist is coaching the victim. If Dudley contends anybody coached B.O., he can develop this claim through the cross-examination of the witnesses or his own expert testimony regarding coaching.

**D. Harmless Error.** "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." Iowa R. Evid. 5.103. In cases of nonconstitutional error, we start with the presumption that the substantial rights of the defendant have been affected. *State v. Howard*, 825 N.W.2d 32, 41 (Iowa 2012). The State has the burden to affirmatively establish the substantial rights of the defendant were not affected. *Id.* at 42. The State does not argue the admissibility of the objectionable statements constitute harmless error. Therefore, we will not make the arguments for the State or reach the issue of harmless error. *See In re Det. of Blaise*, 830 N.W.2d 310, 320–21 (Iowa 2013) (acknowledging generally that the

State waives a harmless-error argument if not raised on appeal, but makes an exception to this rule if the error is based on ineffective assistance of counsel because in an ineffective-assistance-of-counsel claim the burden is on the defendant to show prejudice).

Therefore, we affirm the decision of the court of appeals, reverse Dudley's conviction, and remand the case for a new trial.

**VI. Other Issues Raised on Appeal.**

Dudley has raised other issues on appeal that may not be dispositive. However, these issues may reoccur on the retrial of this case so we will address them.

**A. Testimony of B.O.'s Neighbor.** The district court let the neighbor testify regarding B.O.'s statements to her concerning the abuse. The district court allowed the statements in as an exception to hearsay under rule 5.803(2). The rule provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
>     . . . .
>
>     (2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Iowa R. Evid. 5.803(2).

We have enumerated the factors we consider to determine whether a statement qualifies as an excited utterance. *See State v. Harper*, 770 N.W.2d 316, 319 (Iowa 2009). These factors are

> "(1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement."

*Id.* (quoting *State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999)). The court must consider all the factors to determine if the statements are admissible. *State v. Hy*, 458 N.W.2d 609, 611 (Iowa Ct. App. 1990). The neighbor's testimony regarding B.O.'s statements is problematic because of the time lapse between the alleged event and the statements and the extent to which questioning elicited the statements that otherwise would not have been volunteered.

First, the lapse of time was from Friday evening, when the last incident occurred, to sometime before Sunday afternoon. This factor is not determinative and on its own, is not enough to take the statements out of the exception. *See id.* (holding a four-year olds' statements disclosing sexual abuse to her parents were admissible despite the passage of time because she disclosed at the first possible opportunity).

Second, the statement must be spontaneous and any questions asked of the child must not be " 'calculated to elicit information which would otherwise have been withheld.' " *State v. Brown*, 341 N.W.2d 10, 13 (Iowa 1983) (quoting *State v. Watson*, 242 N.W.2d 702, 704 (Iowa 1976)). Here, the child, upon the family's return home, told her mother the story. The following day, the mother sent B.O. over to the neighbor's home to have the neighbor talk to B.O. about the disclosure she had made to her mother the night before. Further, the mother sent B.O. to Korinek's home under the pretense of delivering eggs to the neighbor. Korinek testified B.O. was not her normal bubbly self when she arrived at the neighbor's home. Korinek also testified she began the conversation by asking B.O. about her vacation. The child then started to cry. Korinek continued to ask B.O. what was wrong. The more she pressed B.O., the more upset the child became.

The rationale underlying the "excited utterance" exception is "that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." *United States v. Tocco,* 135 F.3d 116, 127 (2d Cir. 1998); *see also United States v. Brown,* 254 F.3d 454, 458 (3d Cir. 2001) ("[E]xcitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable."). Also, "it is possible for someone to be too excited to volunteer pertinent information . . ., and thus the inherent 'guarantee of truthfulness' supporting the admission of excited utterances applies equally to declarations made in response to an inquiry." *United States v. Joy,* 192 F.3d 761, 767 (7th Cir. 1999).

We review the admissibility of an excited utterance for an abuse of discretion. The last alleged incident of abuse occurred Friday evening. The next day, B.O. traveled in a car with the Dudleys from Knoxville, Iowa, to Fairfield, Minnesota. Upon arriving at the child's home, the Dudleys stayed to visit with B.O.'s family for a short time. Once Dudley left and the child felt safe, she disclosed what happened to her mother. B.O.'s mother testified that, sometime between 9 p.m. and 10 p.m. on Saturday evening, B.O. came into the mother's room and, without any questioning, told the mother her grandfather had touched her.

District courts should consider the time lapse between the event and statements to ensure the statements were not the product of conscious thought or reflection. *See State v. Tejeda,* 677 N.W.2d 744, 753–54 (Iowa 2004) (finding the district court did not abuse its discretion omitting statements made thirty minutes after the event, in a different location, and in response to direct questioning). However, it is permissible to allow a greater amount of time lapse for children who

make the statements to a parent or other safe adult, at the soonest possible time after the abuse occurred. *See Hy*, 458 N.W.2d at 611. B.O. made the statements to her mother almost twenty-four hours after the incident. After B.O. made the statements to her mother, the child went to bed, and it was not until the next afternoon, approximately thirty-six hours after the incident, B.O.'s mother sent her to Korinek's house. During the time between the disclosure to her mother and the next day, B.O. had time to reflect upon what had occurred. Further, unlike the disclosure to her mother, B.O. required more than one prompting question before she made the statements to Korinek.

The exception for excited utterance "presupposes that the declarant blurted out a remark while under the influence of the startling event, so that it is unlikely that the remark was the product of conscious thought or reflection, but was probably accurate." Jay M. Zitter, Annotation, *When Is Hearsay Statement "Excited Utterance" Admissible Under Rule 803(2) of Federal Rules of Evidence*, 155 A.L.R. Fed. 583, 583 (1999). B.O.'s statements to Korinek were not spontaneous in reaction to a startling event, but rather an upset child telling her story to a neighbor and friend after she no longer felt the urgent need to disclose the information to someone safe. We find the district court abused its discretion in admitting this testimony. On retrial, the statements B.O. made to Korinek are not admissible.

**B. Not Allowing Dudley to Use Gannaway's Criminal Conviction to Impeach His Testimony.** Dudley sought to impeach Gannaway's testimony by using Gannaway's theft conviction that was more than twenty years old. The district court denied Dudley's request, equating the theft charge to a traffic ticket.

Iowa Rules of Evidence allow past crimes of dishonesty to be admitted for the purposes of impeaching a witness. Iowa R. Evid. 5.609(*a*)–(*b*). We have held theft is a crime of dishonesty. *See State v. Parker*, 747 N.W.2d 196, 208 (Iowa 2008) (distinguishing a previous conviction of drug possession from convictions "found to be probative of credibility, like perjury and theft offenses"). Crimes of dishonesty are admissible unless they fall outside the time limit of rule 5.609(*b*). Iowa R. Evid. 5.609(*a*)(2), (*b*). When a crime falls outside the time limit of rule 5.609(*b*), the probative value must substantially outweigh the prejudice of the evidence. *Id.*

Here, the district court did not properly weigh the probative value against the prejudice of the evidence. Because we are ordering a retrial, we do not have to weigh the probative value against the prejudice of the evidence and decide this issue. Therefore, on retrial, the court should do the analysis required under rule 5.609. After the court makes that analysis, an appellate court, if necessary, will be in a better position to decide if the evidence is admissible.

**VII. Disposition.**

We affirm the decision of the court of appeals and reverse the judgment of the district court because some of the expert testimony admitted by the district court amounted to impermissible vouching of the victim's credibility. We remand the case to the district court in order for Dudley to have a new trial consistent with our holding in this opinion.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Waterman and Zager, JJ., who concur specially, and Cady, C.J., who dissents.

**WATERMAN**, **Justice (concurring specially).**

I join the majority opinion but write separately because the majority fails to examine well-reasoned decisions from other jurisdictions addressing the same question we must confront today—the admissibility of expert testimony that the specific child victim's behavior or symptoms are "consistent with" sexual abuse trauma. As the majority acknowledges, "there is a very thin line" between expert testimony that assists the jury and that which impermissibly vouches for the child-witness's credibility. Our court has not previously decided whether the line is crossed by an expert who opines the victim's behavior or statements are "consistent with" child abuse trauma. I think it is worth considering the guidance provided by our sister state supreme courts to help decide this close and important question. The stakes are high when the retrial forces the victim to relive the trauma of the abuse.

I also write separately to emphasize the majority opinion should not be read to foreclose the possible use of such expert testimony in rebuttal if the defendant opens the door by suggesting the victim's behavior is inconsistent with that of an abused child. As noted below, many other courts have allowed testimony that a child victim's behavior or symptoms are "consistent with" child abuse trauma as rebuttal evidence. That is not what happened in this case.

Just two years ago, in *State v. Favoccia*, the Supreme Court of Connecticut thoroughly reviewed the conflicting precedent and policy considerations in reaching the same conclusion we reach today. 51 A.3d 1002, 1012–22 (Conn. 2012). The *Favoccia* court overturned its own precedent to hold that "the trial court abused its discretion in permitting [the expert] to testify about the complainant's behaviors being consistent

with those generally characteristic of sexual assault victims." *Id.* at 1026. Conversely, in *People v. Spicola*, the New York Court of Appeals recently held "the trial judge did not abuse his discretion when he allowed the expert to testify about CSAAS [Child Sexual Abuse Accommodation Syndrome] to rehabilitate the boy's credibility." 947 N.E.2d 620, 635 (N.Y. 2011). Significantly, here, the State offered the challenged expert testimony in its case in chief against Dudley, not in rebuttal. *Spicola* is therefore distinguishable. But, the observation of the *Spicola* dissent nonetheless applies: "[T]he expert[] confirm[ed] . . . nearly every detail of the case and of complainant's behavior as consistent with that of a victim of sexual abuse . . . ." *Id.* at 639 (Lippman, C.J., dissenting). These divergent outcomes reflect national jurisprudence on the issue. Lisa R. Askowitz, *Restricting the Admissibility of Expert Testimony in Child Sexual Abuse Prosecution: Pennsylvania Takes It to the Extreme*, 47 U. Miami L. Rev. 201, 205–06 nn.34–35 (Sept. 1992) (surveying caselaw and recognizing the split in authority).

Many other courts have held opinions that a child victim's behavior or symptoms are "consistent with" child abuse are inadmissible. *See Favoccia*, 51 A.3d at 1015–16 & n.26 (collecting cases); *see also id.* at 1009 (holding that "expert testimony linking a specific complainant to those general characteristics" is "impermissible vouching and ultimate issue testimony" and therefore inadmissible); *Wheat v. State*, 527 A.2d 269, 274–75 (Del. 1987) (concluding that allowing an expert to connect general characteristics to a specific complainant is equivalent to bolstering the victim's credibility and is therefore inadmissible); *State v. Foret*, 628 So. 2d 1116, 1130 (La. 1993) (holding that an expert testifying to child sexual abuse symptoms must limit the testimony to general characteristics that cannot directly concern the particular victims);

*Commonwealth v. LaCaprucia,* 671 N.E.2d 984, 985 (Mass. App. Ct. 1996) (holding that the trial court abused its discretion by allowing expert testimony that "directly link[ed] the characteristics of sexually abused children to the complainants in this case"); *State v. Chamberlain,* 628 A.2d 704, 707 (N.H. 1993) (holding that testimony that a child's symptoms were "consistent with" CSAAS could not be offered to prove the child was abused); *State v. Michaels,* 625 A.2d 489, 499–502 (N.J. Super. Ct. App. Div. 1993) (reversing a conviction based on inadmissible testimony that the victims' behavior was "consistent with" sexual abuse), *aff'd,* 642 A.2d 1372 (N.J. 1994).

Although many other jurisdictions have allowed testimony the victim's behavior or symptoms are "consistent with" child abuse trauma under *some* circumstances,[2] most limit such testimony to rehabilitation of the victim[3] whose credibility was attacked by the defense. *See People*

---

[2] *See Favoccia,* 51 A.3d at 1015 n.26 (surveying cases); *see also United States v. Lukashov,* 694 F.3d 1107, 1116 (9th Cir. 2012) ("We conclude that the district court did not abuse its discretion in allowing [the doctor] to testify about the characteristics that she looks for when assessing a child victim's story of sexual abuse, and to opine that her evaluation of [the child] was consistent with [the child's] allegations of sexual abuse."); *Steward v. State,* 636 N.E.2d 143, 146 (Ind. Ct. App. 1994) ("Indiana courts have consistently allowed expert testimony concerning whether a particular victim's behavior is consistent with the behavioral patterns of victims of sexual abuse."), *aff'd,* 652 N.E.2d 490 (Ind. 1995); *State v. McIntosh,* 58 P.3d 716, 728–30 (Kan. 2002) (holding that the testimony of an expert witness is admissible when the witness outlines the general characteristics of sexually abused children and then states that the victim's symptoms are consistent with those characteristics); *Spicola,* 947 N.E.2d at 635 (holding that the trial judge did not abuse his discretion by admitting expert testimony on rebuttal which connected generalized sexual abuse symptoms to the individual victim); *State v. Stowers,* 690 N.E.2d 881, 883 (Ohio 1998) (holding that "an expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence").

[3] These safeguards can take the form of prohibiting all expert testimony— including all "consistent with" testimony—except for purposes of rehabilitation on rebuttal by requiring the testimony to be narrowly tailored to an identifiable symptom from which the complainant suffers. *See, e.g., People v. Nelson,* 561 N.E.2d 439, 444 (Ill. App. Ct. 1990) ("At this time, we choose to limit the admissibility of such testimony

*v. Beckley*, 456 N.W.2d 391, 399 (Mich. 1990) ("We find that the rebuttal limitation *as expressed by the majority of jurisdictions* is the preferable approach." (Emphasis added.)). Such cases are inapplicable here because the State does not argue Dudley opened the door to such testimony by arguing the victim's behavior was inconsistent with child abuse trauma.

The result we reach today is supported by the decisions of other courts that recognize testimony the victim's behavior or symptoms are "consistent with" child abuse is the "functional equivalent" of vouching for the victim's credibility. *Spicola*, 947 N.E.2d at 639. The Connecticut Supreme Court aptly concluded:

> "[T]here is no material distinction between express testimony that the child has been sexually abused, and implicit testimony that outlines the unreliable behavioral reactions found with sexually abused victims, followed by a list of the complainant's own behavioral reactions, that points out that the two are consistent, and then invites the jury to add up the points to conclude that the child has been sexually abused."

*Favoccia*, 51 A.3d at 1023 (quoting *People v. Peterson*, 537 N.W.2d 857, 873 (Mich. 1995) (Cavanagh, J., dissenting)). "[S]uch testimony 'comes too close to testifying that the particular child is a victim of sexual abuse.'" *Id.* at 1017–18 (quoting *Peterson*, 537 N.W.2d at 868).

The victim's credibility is often the fighting issue in child abuse cases. *See* John E.B. Myers, et al., *Expert Testimony in Child Sexual*

---

to rebuttal after the victim's credibility has first been attacked."); *see also People v. Bowker*, 249 Cal. Rptr. 886, 891 (Ct. App. 1988) (requiring that the testimony is "targeted to a specific 'myth' or 'misconception' suggested by the evidence"); *People v. Beckley*, 456 N.W.2d 391, 399 (Mich. 1990) (holding that "only those aspects of 'child sexual abuse accommodation syndrome,' which specifically relate to the particular behaviors which become an issue in the case are admissible").

*Abuse Litigation*, 68 Neb. L. Rev. 1, 89 (1989). I agree with the Connecticut Supreme Court's assessment that:

> ["Consistent with"] testimony create[s] a significant risk that the jury w[ill] consider [the expert's] testimony as an imprimatur on the complainant's allegations, particularly [when] her testimony [is] based directly on observations of the complainant[] . . . , which renders [the] case distinct from those wherein the expert disclaims any familiarity with the specific facts of the case or testifies only in terms of generalities or hypotheticals.

*Favoccia*, 51 A.3d at 1025. As another appellate court recognized:

> It is one thing to educate the jury to understand that child abuse victims may act in counterintuitive ways, and that excessive weight should not be given to factors such as failure to disclose when the child victim's credibility is weighed . . . [and] quite another to suggest to the jury that the events and feelings expressed by the child witnesses are the same as those experienced by other victims of abuse. That this has the effect of buttressing the witnesses' credibility seems impossible to deny.

*Commonwealth v. Deloney*, 794 N.E.2d 613, 623 (Mass. App. Ct. 2003) (citations omitted). The purpose of expert testimony in child sexual abuse cases

> is to give the jury a framework of possible alternatives for the behaviors of the victim at issue in the case in relation to the class of abuse victims. In this respect, the expert's role is to provide sufficient background information about each individual behavior at issue which will help the jury to dispel any popular misconception commonly associated with the demonstrated reaction.

*Beckley*, 456 N.W.2d at 406. This purpose can be accomplished through generalized testimony without vouching for the victim's truthfulness. *See Favoccia*, 51 A.3d at 1018 ("[T]he 'conduct of a child who has been sexually abused, and the emotional antecedents underlying this conduct, can be effectively explained to the jury through testimony relating to the

class of victims in general . . . .' " (quoting *State v. Sims*, 608 A.2d 1149, 1154 (Vt. 1991))).

> [W]here "the sole reason for questioning the 'expert' witness is to bolster the testimony of [the complainant] by explaining that his version of the events is more believable than the defendant's, the 'expert's' testimony is equivalent to an opinion that the defendant is guilty, and the receipt of such testimony may not be condoned."

*Spicola*, 947 N.E.2d at 639 (quoting *People v. Ciaccio*, 391 N.E.2d 1347, 1351 (N.Y. 1979)).

Armed with generalized knowledge, the fact finder can connect the dots. We should be mindful that "more specific testimony yields returns that increase in prejudice to the defendant as they diminish in value with respect to the edification of the jury as to behaviors that might affect the complainant's credibility." *Favoccia*, 51 A.3d at 1024.

As the foregoing cases demonstrate, expert testimony may be admissible in rebuttal if the defendant opens the door by challenging the credibility of the child victim based on behavior or symptoms the expert can show is consistent with child abuse trauma. But, in this case, the expert crossed the line by providing such an opinion in the State's case in chief.

Zager, J., joins this special concurrence.

**CADY**, **Chief Justice (dissenting).**

I respectfully dissent.  I would conclude that any error in this case in admitting expert testimony at trial concerning behavior exhibited by the victim that was consistent with sexual abuse trauma was harmless and does not require a new trial.

There is a very fine line between the admission of expert testimony that identifies behavior or symptoms typically displayed by victims of sexual abuse and inadmissible expert testimony about behavior or symptoms displayed by victims of sexual abuse that vouches for the credibility of a victim of sexual abuse.  Finding that subtle difference is committed to the sound discretion of the district court to make the difficult call, ruling on such evidence in light of all the circumstances.  *See State v. Frank*, 298 N.W.2d 324, 327 (Iowa 1980).  Discretion is not abused unless the ruling is based on "untenable" grounds, is "clearly unreasonable," or no support for the decision exists in the record.  *State v. Gartin*, 271 N.W.2d 902, 910–11 (Iowa 1978).  Moreover, although prejudice is presumed unless the record affirmatively establishes otherwise, *State v. Paredes*, 775 N.W.2d 554, 571 (Iowa 2009), an abuse of discretion constitutes reversible error only if the admission of the evidence "injuriously affect[s]" the complaining party, results in a "miscarriage of justice," or a different result would have occurred if the evidence had not been admitted, 7 Laurie Kratky Doré, *Iowa Practice Series, Evidence* § 5.103:14, at 65 (2013).

The fine line in the legal standard in this case weighs against prejudice to support reversible error.  The trial court had discretion to admit expert testimony that identified recognized symptoms of sexual abuse trauma that were exhibited by the victim, and there is nothing in

the record to suggest the State used or sought to use this evidence to vouch for the credibility of the victim. Reversible error in admission of evidence at trial should not come down to splitting hairs.