# IN THE COURT OF APPEALS OF IOWA

No. 24-0861
Filed July 23, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MITCHEL HARRIS DUSKIN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Osceola County, Charles Borth, Judge.

Mitchel Harris Duskin appeals his convictions for sexual abuse. **AFFIRMED.**

Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered without oral argument by Badding, P.J., Chicchelly, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**CHICCHELLY, Judge.**

Mitchel Harris Duskin appeals his convictions for sexual abuse, contending the court erred in its evidentiary and proposed-jury-instruction rulings and challenging the sufficiency and weight of the evidence supporting his convictions. Upon our review, we affirm.

## I.    *Background Facts and Proceedings.*

Duskin, his wife, Mary, and their two children lived in a three-bedroom home in northwest Iowa.  Duskin and Mary shared a downstairs bedroom while the two children, J.D. and S.D., shared an upstairs bedroom.  The third bedroom, which was also upstairs, was usually occupied by one of the parents' brothers.  Duskin's mother also resided in the home at times, but she testified she slept in the living room or with S.D.

In late 2021, S.D. told Mary that Duskin "was touching [her] in places that he shouldn't," including her "vagina, boobs, and butt."  Mary confronted Duskin, who apologized to S.D. and stated that "he would set boundaries and it would never happen again."  Just days later, the Iowa Department of Health and Human Services (DHHS) and law enforcement responded to the home after receiving a complaint.  Several items were seized, including the bedding from the parents' bed and S.D.'s journal pages, and DNA swabs were collected from relevant parties.  Kasey King, a forensic interviewer, also conducted an interview with S.D. and shared her findings with law enforcement.

When interviewed by these officials, Duskin admitted that he began "checking" S.D. at age ten.  To perform these "checks," Duskin described to law enforcement how he would place his index finger and middle finger on her genitals

and "split both of his fingers apart" to look inside.  Then Duskin "would use a tissue to wipe that area."  At one point, Duskin also "assisted" S.D. with menstrual products, where he placed a tampon inside her vagina and "put his fingers in there to make sure it was inserted properly."  "[C]onfusion started when he progressed from 'checking and wiping' to inserting his finger and later his penis."  Duskin alleged that he was helping his daughter with "cleanliness" and "hygiene" through these checks and described his past work as a care assistant performing similar tasks for individuals with disabilities.

The State charged Duskin with count I, third-degree sexual abuse; and counts II through V, second-degree sexual abuse.  Early on in the proceedings, Duskin moved in limine to exclude the testimonies of King, law enforcement, and the DHHS child protective assessment worker.  The court granted the motion in part and denied it in part, permitting the testimony but excluding any statements that constituted hearsay or other impermissible evidence.

A jury trial occurred in March 2024, at which several witnesses testified on behalf of the State.  Duskin also called several witnesses in his own defense who confirmed Duskin's good parenting, and he testified himself, denying the abuse allegations.  After the parties rested but before submitting the case to the jury, Duskin requested a supplemental jury instruction on the definition of a "sex act."  The district court declined his request, and the model instructions were submitted to the jury.

After a three-day trial, the jury found Duskin guilty of counts I, II, IV, and V; and found him not guilty for count III.  The court sentenced him to an indeterminate term of incarceration not to exceed ten years on count I; twenty-five years for each

of counts II, IV, and V; and a lifetime special sentence under Iowa Code section 903B.1 (2024). The court ordered the sentences for counts I and IV to run concurrent to each other and to counts II and V, which would run consecutively, for a total cumulative sentence not to exceed fifty years. Duskin appeals.

## II.    Evidentiary Rulings.

On appeal, Duskin first contends that the court should have excluded evidence in the form of expert and layperson testimonies because they improperly vouched for S.D. and contained hearsay without an applicable exception.

### A. Admission of Forensic Interviewer's Testimony.

Duskin generally challenges the court's admission of King's testimony, characterizing it as "impermissible vouching."[1]  We review evidentiary rulings for an abuse of discretion. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014).  While we permit experts to "express opinions on matters that explain relevant mental and psychological symptoms present in sexually abused children," we do not permit "testimony that either directly or indirectly renders an opinion on the credibility of a witness."  *State v. Mall*, No. 21-1612, 2023 WL 4759446, at *2 (Iowa Ct. App. July 26, 2023) (citation omitted).  To determine whether the State engaged in impermissible vouching, "we must break down each statement [the defendant]

---

[1] Duskin also challenges King's testimony as an expert, arguing she does not meet the qualifications to be classified as an expert under Iowa Rule of Evidence 5.702. He further challenges "vouching" statements made in King's testimony that delayed disclosure occurs in "[a] majority of [child sexual abuse] cases" and similar statements made by the State during closing arguments, in which the State highlighted King's testimony.  But because Duskin did not object on any of these grounds, these arguments are unpreserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (requiring issues to "be both raised and decided by the district court before we will decide them on appeal").  We therefore do not address them further.

'claims as objectionable.'" *State v. Pitsenbarger*, No. 14-0060, 2015 WL 1815989, at *5 (Iowa Ct. App. Apr. 22, 2015) (citation omitted).

But we need not reach the merits of Duskin's argument on two grounds. First, he failed to object to the majority of King's testimony. While Duskin made a standing objection that King's testimony and interview with S.D. generally constituted improper vouching, he only objected to specific statements twice. Both times, he argued that King's testimony regarding the reactions of child sexual-abuse victims was impermissible vouching. While these two statements and his standing objection are preserved for our review, we do not consider any other statements argued on appeal.[2] *See Meier*, 641 N.W.2d at 537. Second, Duskin's arguments are waived. While in his brief Duskin points generally to the subject matter in King's testimony, he fails to cite specific, allegedly-impermissible statements. We decline to "speculate on the arguments [the appellant] might have made and then search for legal authority and comb the record for facts to support such arguments." *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996). Instead, we simply find such arguments are waived and only consider those statements which Duskin specifically argues. *See State v. Jackson*, 4 N.W.3d 298, 311 (Iowa 2024) (finding a party's failure to cite the record and develop arguments forfeits their issue on appeal).

Returning to the arguments not waived by Duskin, in which he contends that King's testimony should not have included the reactions of child sexual-abuse

---

[2] We do note that "standing objections are not a favored trial practice" because they make appellate review more difficult "and, for the litigants, more uncertain." *State v. Juste*, 939 N.W.2d 664, 672 (Iowa Ct. App. 2019) (citation omitted).

victims, we find it fails on the merits. The Iowa Supreme Court has distinguished nonspecific testimony about victims from an expert making specific conclusions about the particular child's credibility. *Compare Dudley*, 856 N.W.2d at 678 (finding the expert's testimony that the victim's "statements were consistent throughout the interview" was not impermissible vouching), *with id.* (finding a statement "based . . . on [the expert's] opinion that she believed [the defendant] sexually abused [the child]" was improper vouching). We further "permit[] an expert witness to testify regarding the 'typical symptoms exhibited by a person after being traumatized'" and "why child[] victims may delay reporting their sexual abuse." *Id.* at 676; *see also State v. Montealvo*, No. 19-1788, 2021 WL 590110, at *3 (Iowa Ct. App. Feb. 3, 2021) (finding the witness's statement that delayed disclosure is "[v]ery common" does not constitute vouching). In her testimony, King "avoided commenting directly on the child at issue and only testified generally about victims of sexual abuse." *See Dudley*, 856 N.W.2d at 676. In fact, King referenced S.D. only once, and only to state the fact that she conducted an interview with her. But the State did not elicit any specific testimony about the interview, the allegations made, or any conclusions draw therein. We therefore can find no evidence of vouching and affirm the admission of King's testimony.

B. *Admission of Alleged Hearsay Evidence.*

Duskin makes a litany of other arguments related to hearsay and vouching, including S.D.'s interview with law enforcement and DHHS and the existence of S.D.'s journal pages.[3] But the State contends that these arguments are

---

[3] Duskin similarly contends that S.D.'s statement that she told law enforcement and DHHS the truth was both hearsay and impermissible vouching. But other than

unpreserved for our review because while Duskin made several objections throughout the trial, most were on grounds of vouching, not hearsay.

While we may agree and could end our analysis there, we instead note that these statements are not hearsay. "Hearsay is a statement the declarant makes other than while testifying at the current trial that is offered to prove the truth of the matter asserted in the statement." *State v. Thompson*, 982 N.W.2d 116, 121 (Iowa 2022) (cleaned up). Because hearsay is generally inadmissible, the court has no discretion to admit hearsay without a valid exception, so our review is for correction of errors at law. *Id.* But no out-of-court statements were ever introduced. While the State elicited testimonies about the occurrence of the interviews during the investigation, "[t]hese witnesses did not testify to the contents of the [interviews], only that they occurred." *See State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). Similarly, witnesses did not testify to the subject matter of S.D.'s journal pages, only that they existed. Without any out-of-court statement to analyze, we need not even consider whether an exception applies.

Even so, these arguments would similarly fail on their merits. Even if the content of the pages or interviews had been shared, we still permit witnesses to testify to allegations made during an investigation when it is used "to explain [the official's] subsequent actions." *State v. Elliott*, 806 N.W.2d 660, 667–68 (Iowa 2011). Despite Duskin's claim that "the fact that [law enforcement] interviewed her and then charged Duskin with sexual abuse improperly indicates

---

a conclusory statement, he provides no further analysis or citations to authority, so we do not consider it further. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (deeming waived issues inadequately argued on appeal).

to the jury what S.D. had alleged in those interviews," we disagree. We can infer from S.D.'s testimony what allegations were made during the investigation, and this is being used to explain the procedures undertaken by law enforcement to bring forth charges. Accordingly, we find no error by the district court in admitting non-hearsay statements for a proper purpose.

### III.    Sufficiency of the Evidence.

Duskin then argues that there is insufficient evidence to support his convictions. We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "In conducting that review, we are highly deferential to the jury's verdict. The jury's verdict binds this court if the verdict is supported by substantial evidence." *Id.* Specifically, Duskin challenges the sufficiency on two grounds, alleging: (1) the State failed to establish the correct timeline for two counts; and (2) there is no evidence of a "sex act" for all counts. We address each argument in turn.

First, Duskin contends that the State failed to prove that a sex act occurred in the requisite timeframe for counts I and IV. At trial, the jury was instructed to convict if it found Duskin committed a sex act "[o]n or about the dates alleged in the Trial Information," which were November 2020 for count I and November 2019 for count IV. But our court has consistently agreed that the "on or about" language is "simply a device," and the precise date is unnecessary for conviction. *State v. Cain*, No. 14-1506, 2015 WL 5285763, at *2–3 (Iowa Ct. App. Sept. 10, 2015); *accord State v. Parmenter*, No. 18-1997, 2019 WL 6907457, at *5 (Iowa Ct. App. Dec. 18, 2019) ("[O]ur court concluded the State did not have to prove the alleged crimes occurred on a specific date where the jury instructions and trial information

specified the alleged crimes occurred 'on or about' particular dates."); *State v. Brown*, 400 N.W.2d 74, 77 (Iowa Ct. App. 1986) ("The date fixed in the indictment or information for the commission of a crime is not material."). "This approach is consistent with . . . our general rule that the State is not required to prove the precise time and place of a crime." *State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003). S.D. testified to acts occurring in general timeframes, which is sufficient for conviction. *See generally Cain*, 2015 WL 5285763, at *2–3. We therefore find Duskin's argument without merit.

Second, Duskin argues that there is no evidence that any sex act was committed for counts I, II, IV, and V. But most of his arguments are challenges to S.D.'s credibility, in which he claims physical or corroborating evidence should have been presented. But we do not require corroboration of S.D.'s testimony. *See State v. Donahue*, 957 N.W.2d 1, 10 (Iowa 2021) (finding an instruction noting "no requirement for corroboration of the testimony of sexual abuse victims is an accurate statement of the law"). And unlike the weight-of-the-evidence standard, we leave credibility determinations to the jury when considering the sufficiency of evidence. *See State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). Instead, we view the evidence "in the light most favorable to the [State]." *State v. Crawford*, 974 N.W.2d 510, 515 (Iowa 2022). Under this standard, we find substantial evidence supports Duskin's convictions. S.D. testified that Duskin would perform "checks," in which S.D. sat on the bathroom counter and Duskin would "stick his finger in [her vagina]." She also described instances in which Duskin came into her bedroom and "mov[ed] his finger around" her clitoris, which occurred "ten to fifteen times" from the age of ten to thirteen. During one time, Duskin had S.D.

"bend over the bed" and she felt something inside her vagina that was "bigger than a finger." When asked, Duskin claimed "[i]t was his finger." S.D.'s testimony alone is sufficient for the convictions. *See Donahue*, 957 N.W.2d at 10–11 ("A sexual abuse victim's testimony alone may be sufficient evidence for conviction."). But several other witnesses also testified to the allegations and Duskin himself confessed that he fondled and digitally penetrated his daughter's genitals. While Duskin claimed the contacts were nonsexual and for "hygienic purposes," the fact-finder is tasked with considering the "the type of contact and the circumstances surrounding it" to determine its nature. *State v. Pearson*, 514 N.W.2d 452, 455–56 (Iowa 1994) (finding "[w]hether certain conduct constitutes 'sexual contact' is a fact question"). The jury made such a determination here when it found that the contacts were sexual in nature and convicted Duskin. We find this is sufficient to support Duskin's conviction and affirm.

### IV.    Weight of the Evidence.

Duskin next contends the district abused its discretion when denying his motion for new trial because the verdict is contrary to the weight of the evidence. *See Ary*, 877 N.W.2d at 706. The weight-of-the-evidence standard "permits the court to consider the credibility of witnesses." *Id.* In considering whether to grant a new trial, the court determines "whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice." *Id.* (citation omitted). A motion for a new trial is granted "in exceptional circumstances" and "only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.* at 705–06. We do not find that Duskin met such a heavy burden.

To support his argument, Duskin reasserts his sufficiency claims, in which he challenges S.D.'s credibility and admonishes the State's alleged failure to corroborate her testimony. But while credibility is a consideration for the weight-of-the-evidence standard, we will only reverse "if more evidence supports the alternative verdict as opposed to the verdict rendered." *Id.* at 706. Upon our review of the record, we do not find that to be the case. Duskin himself admitted to law enforcement that he digitally penetrated his minor daughter and further acknowledged his actions were improper when he apologized. While he denied anything more than "checking" for hygienic purposes occurred, there was other evidence to negate this. S.D.'s testimony was not limited to "checking"; she testified at length to several instances and types of sexual abuse from touching to penetration. Even without corroboration of her testimony, we find that more credible evidence supports the verdict than not. Accordingly, we do not find that the court abused its discretion when denying Duskin's motion for a new trial.

### V.	*Jury Instructions.*

Finally, Duskin argues that the court committed error by declining to submit his proposed supplemental jury instruction. *See State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa 2021) ("We review challenges to jury instructions for correction of errors at law." (cleaned up)). Specifically, Duskin requested that the court include the *Pearson* factors as part of the model jury instruction. *See Pearson*, 514 N.W.2d at 455 (designating a list of factors to determine whether contact is considered "sexual in nature"). But the Iowa Supreme Court has already determined that a nearly-identical jury instruction was proper without the addition of *Pearson* factors; in fact, it found the "requested supplemental instruction was

contrary to *Pearson*." *Montgomery*, 966 N.W.2d at 652. As an intermediary court, "[w]e are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, No. 13-0347, 2014 WL 667598, at *7 (Iowa Ct. App. Feb. 19, 2014). Accordingly, we find that the court did not err when declining to submit Duskin's supplemental jury instruction.

## VI.    Disposition.

Because the court neither erred nor abused its discretion and there is sufficient evidence supporting the verdicts, we affirm Duskin's convictions.

**AFFIRMED.**