# IN THE COURT OF APPEALS OF IOWA

No. 18-0294
Filed May 1, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**EARNEST B. BYNUM,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Nicholas Scott, District Associate Judge.

Earnest Bynum appeals following his conviction for falsely reporting a criminal offense. **AFFIRMED.**

Mark C. Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

Earnest Bynum appeals following his conviction for falsely reporting a criminal offense, in violation of Iowa Code section 718.6(1) (2016).[1] Bynum asserts he was denied an impartial jury of his peers; the court abused its discretion in allowing prior-bad-acts evidence and photographs of firearms used during the police response; and the court erred in denying Bynum's requested jury instruction, which stated carrying weapons is not a crime if the person has a permit. Finding no abuse of discretion in the trial court's denial of Bynum's motions for mistrial or its evidentiary and instructional rulings, we affirm.

**I. Background Facts and Proceedings.**

In March of 2016, Bynum was living with his girlfriend Pamela Haskins in Cedar Rapids. They had known each other for years and share a son, who was about seventeen years old at the time. Haskins also has two older sons, whom Bynum knew.

On March 9, Haskins and Bynum had a disagreement ending with Bynum pushing Haskins against a wall before he left the residence. That evening, Haskins called police to report a domestic assault.

On March 10, Haskins was at home with her youngest son and her friend, Judy, when Haskins's older son stopped by with his daughter. About an hour after the older son arrived, the younger son was going to drive Judy to her home. When

---

[1] Section 718.6(1) provides:

> A person who reports or causes to be reported false information to . . . a law enforcement authority, or other public safety entity, knowing that the information is false, or who reports the alleged occurrence of a criminal act knowing the act did not occur [and, if] the alleged criminal act reported is a serious or aggravated misdemeanor or felony, . . . the person commits a serious misdemeanor.

Haskins, Judy, and the teen stepped out on the front porch, spotlights were activated and police officers yelled at them to put their hands in the air. The teen was ordered to turn around, walk backwards, and get down on his knees. The older son came out of the house holding his daughter in his arms, and he too was ordered away from the house. Officers checked the house; no guns were found.[2]

Officer Shannon Aguero explained to Haskins they were acting on a phone call and showed Haskins the phone number. Haskins recognized the number as belonging to Bynum.

The call to which police responded came in at about 10:17 p.m. Bynum called the police nonemergency number to report that two males in a Suburban had pulled up to Haskins's address, parked over the sidewalk, and jumped out of the vehicle carrying a handgun and a rifle. He reported the men went up to the door, knocked, and entered the house. Bynum provided his phone number but not his name. Bynum denied knowing who lived at that address and denied having previously seen that vehicle.

Officer Aguero made contact with Bynum on March 24. Bynum initially denied any knowledge of a phone call to police but later admitted to making the report on the nonemergency line. Bynum told Officer Aguero that he was in the area near Haskins's home when he saw the Suburban drive by and observed a male waving a gun in his direction. Bynum said he knew where the vehicle was going so he reported that address and followed the vehicle to Haskins's home. Bynum identified the person waving the gun as Haskins's older son. Bynum said

---

[2] The officers "cleared" the house, which involves a room-to-room sweep to check for people or signs of danger.

he did not provide the man's name or his own name because he did not want to get anyone in trouble and he did not want to be a snitch.

Bynum was charged with making a false report to law enforcement. The State sought a preliminary ruling on whether the court would allow the guns used by officers in responding to the dispatch to be shown to the jury. Bynum objected on relevance grounds. The trial court ruled it would allow photographs of the guns used by officers but not the actual guns. The court determined the photos would be relevant "to show the jury the chain of events as they occurred and actions that were initiated with that 911 [sic] phone call."

Before trial started defense counsel made a record about the jury pool:

> And I understand that the case law—I think the most recent— one of the most recent cases to deal with it is *State v. Kelvin Plain, Sr.* case, which I did write down the citation for, 898 N.W.2d 801, discusses a criminal defendant's Sixth Amendment right to an impartial jury and to a jury drawn from a fair cross-section of the community, and that deals primarily with the pool as a whole.
> I believe that we had 35 members in the pool. There were at least two of those that were African-American. So I believe that the pool met the standard, because according to my quick research of, I believe it was the 2016 census information for Linn County, Iowa, the percentage of citizens claiming to be black or African-American was 5.2 percent. I believe we met that standard with the 2 out of 35. I did, however, want to make the record clear regarding the initial jury that did include someone who was African-American and then due to the circumstances we then did not have anyone up on the panel who was African-American. I understand we don't get to pick our jurors. We don't get to decide who comes into the box, but I did want to make that clear for the purposes of the record. And I understand that it was no fault of this court that led to that irregular procedure, but I would assert that the due to the low number of jurors that were called in, that led to the circumstances where we had to reshuffle everything and that then deprived Mr. Bynum the opportunity to have someone of his heritage in our petit jury. So I would allege that violates the due process and request a mistrial on that ground.

The prosecutor acknowledged the events occurred as the defense asserted. The court ruled:

> At this point I'm going to overrule the due process objection. Certainly you've made your record for appeal. And I would note on the 21 that we called up for the petit jury I did not see anybody of African-American heritage. There were two in the pool that you noted, but at no time did they ever make it to the petit jury so that record has been made.

At trial, Haskins testified she and Bynum had a long-term, on-and-off relationship. When an officer showed her the phone number of the instigating call, she knew immediately it was made by Bynum "because at that time that was his MO and he was trying to do things to, not physically hurt me, but to emotionally hurt me."

Officer Aguero testified that she and other officers were dispatched to Haskins's home based on Bynum's report of two males entering the home, one with a handgun and one with a long gun; the dispatch was a "code two" calling for lights and sirens due to a reported threat to the life of individuals. When officers arrived at the scene, dispatch provided an update that there had been a call to the same address the day before. Officer Aguero was not aware the initial call came in on the nonemergency number. She testified she believed a home invasion had occurred because the report was of individuals with guns entering the residence.

Upon arrival, as the caller had stated, Officer Aguero observed a Suburban parked at an angle in the driveway and across the sidewalk. So she and several other officers parked down the block and surrounded the house with weapons drawn. Officer Aguero carried her patrol rifle instead of her handgun, explaining it was easier to use at longer distances. As people came out of the house, they were

ordered to get down and other officers went inside to clear the house. No firearms were found.

On cross-examination, Officer Aguero acknowledged the initial call to dispatch did not claim anyone was in danger. She also acknowledged it was not necessarily illegal for someone to possess a handgun or rifle and that many people possess licenses to carry firearms.

After closing arguments, the defense sought a modification to a jury instruction:

> Instruction Number 14, which is the definitional instruction for carrying weapons, I failed to realize earlier that it does not include any exceptions basically. That it essentially says that anyone within city limits that has a firearm is committing carrying weapons. And obviously we all know that is not accurate in that there are exceptions, primarily there's an exception for anyone who possesses a legally-issued permit to carry such firearms. So I would request the court amend that instruction if that's even possible.

The State resisted, noting the instruction was accurate and arguing the requested modification related to a defense to the criminal charge—not to the definition of the offense. The court denied the proposed change.

A jury found Bynum guilty as charged, specifying the crime he reported was that of carrying weapons.

Bynum appeals. He contends the court erred in denying his motion for mistrial based on the makeup of the jury. He also asserts the court abused its discretion in allowing prior-bad-acts evidence and photographs of firearms used during the police response. Further, Bynum argues the court erred in denying Bynum's requested jury instruction.

**II. Scope and Standard of Review.**

We review constitutional issues de novo. *State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017).

We review the denial of a motion for mistrial for an abuse of discretion. *Id.*

When assessing a district court's decision for an abuse of discretion, we only reverse if the district court's decision rested on grounds or reasoning that were clearly untenable or clearly unreasonable. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). "When a ground or reason is based on an erroneous application of the law or not supported by substantial evidence, it is untenable." *Id.*

A district court's refusal to give a requested jury instruction is generally reviewed for errors at law; however, if the jury instruction is not required but discretionary, we review for an abuse of discretion. *Id.* (citing *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707–08 (Iowa 2016)).

**III. Discussion.**

***A. Right to an impartial jury.*** Bynum asserts the racial composition of the jury violated his Sixth Amendment right. While Bynum concedes the jury "pool" fairly reflected the composition of the community, he asserts the jury "panel" did not.[3] The State argues Bynum's complaint about the jury composition came too late.

---

[3] As explained in *Plain*, 898 N.W.2d at 821 n.5,

> Under Iowa's jury-selection statutes, a jury "pool" (i.e., venire) consists of all persons who are summoned for jury service and who report. Iowa Code § 607A.3(9). A jury "panel" consists of "those jurors drawn or assigned for service to a courtroom, judge, or trial." *Id.* § 607A.3(7). And a "petit" jury (i.e., grand jury) consists of the jurors who are actually called upon to attend court proceedings. *See id.* § 607A.3(3).

As a general rule, objections must be raised at the earliest opportunity after the grounds for objection become apparent." *State v. Johnson*, 476 N.W.2d 330, 333 (Iowa 1991). The jury panel's racial composition would have been immediately apparent upon the commencement of voir dire, yet defense counsel waited until after voir dire to make the objection. Nonetheless, the district court ruled on Bynum's objection to the jury panel, and we will to address the merits of the claim. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) ("We choose to pass [the defendant's] serious preservation-of-error problems and affirm on the merits.").

There is a three-part test for determining whether the constitutional right to an impartial jury has been violated by not having the jury drawn from a fair cross-section of the community. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979); *see also Plain*, 898 N.W.2d at 822.

> [T]he defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364.

There is no question in this case regarding the first element; there were no African-Americans in the panel. But Bynum has not established the other two elements of a prima facie showing. Bynum acknowledges "the system in place yielded a group of potential jurors that fairly reflect the racial composition of the community." However, he argues the jurors available for selection at his trial "did

not occur because of chance or a random occurrence." Bynum argues that he has established the underrepresentation was systematic in nature because

> African-Americans were excluded from the venire in [his] case as a result [of] the deliberate decision to give the civil case precedence over the criminal case and the deliberate decision to proceed with a trial with a jury chosen from a panel with no African-Americans even when a motion for a mistrial was made to remedy the situation.

This assertion is not sufficient to establish the third prong of the *Duren* test.

> The third prong "distinguishes between situations where a particular jury venire is nonrepresentative and those situations where the jury venires in a district are continuously nonrepresentative of the community." To establish systematic exclusion, a defendant must establish the exclusion is "inherent in the particular jury-selection process utilized" but need not show intent. In other words, the defendant must show evidence of a statistical disparity over time that is attributable to the system for compiling jury pools. "If there is a pattern of underrepresentation of certain groups on jury venires, it stands to reason that some aspect of the jury-selection procedure is causing that underrepresentation."

*Plain*, 898 N.W.2d at 824 (citation omitted). Bynum failed to show a "statistical disparity over time that is attributable to the system for compiling jury pools." *Id.* We affirm the trial court's denial of his motion for mistrial based on the composition of the jury panel.

**B. Prior-bad-acts evidence.** Bynum contends the trial court abused its discretion in allowing evidence of the March 9 domestic disturbance between Haskins and him and any reference to prior calls to their residence.

Under Iowa Rule of Evidence 5.404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" though it may be admissible "for another purpose such as proving motive, opportunity,

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Rule 5.404(b) excludes evidence of other crimes not on grounds of relevance but "based on the premise that a jury will tend to give other crimes, wrongs, or acts evidence excessive weight and the belief that a jury should not convict a person based on his or her previous misdeeds." *State v. Nelson*, 791 N.W.2d 414, 425 (Iowa 2010). But, the rule expressly permits evidence of other crimes, wrongs, or acts for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).

A court may admit evidence of other crimes, wrongs, or acts if there is a non-character theory of relevance and the evidence is material to a legitimate issue other than the defendant's general criminal disposition. *Nelson*, 791 N.W.2d at 425. Even if there is a non-character theory of relevance, "the probative value of the evidence [must] not [be] substantially outweighed by the danger of unfair prejudice to the defendant." *State v. Cox*, 781 N.W.2d 757, 761 (Iowa 2010).

In ruling on Bynum's motion in limine to exclude any reference to the March 9 domestic assault call, the court found the prior incident was admissible because it was close in time and relevant to Bynum's motive, intent, or lack of mistake in making the March 10 phone call. We find no abuse of discretion in this ruling as it could be argued the interpersonal conflict was "logically relevant" to the reason for making a false report. *See State v. Graham*, No. 13-1306, 2014 WL 4629585, at *2 (Iowa Ct. App. Sep. 17, 2014) ("'Logical relevancy' may be defined as the existence of such a relationship in logic between the fact of which evidence is

offered and a fact in issue that the existence of the former renders probable or improbable the existence of the latter." (quoting *State v. Knox*, 18 N.W.2d 716, 723 (Iowa 1945)).

Bynum argues the admission of prior-acts evidence were unfairly prejudicial. Bynum references Haskins's statement that she had made "prior calls" to police and Officer Aguero's statements (1) that dispatch provided an update "that there had been previous incidents at the residence" and (2) that Bynum's number was in law enforcement's system.

A fundamental problem is that Bynum did not object to those statements in a timely manner. *See State v. Yaw*, 398 N.W.2d 803, 805 (Iowa 1987) ("It is well settled in Iowa that objections to evidence must be raised at the earliest opportunity after the grounds for objection become apparent."). When he did object to Haskins's statement, Bynum rejected the court's offer to provide a contemporaneous cautionary instruction, opting instead for a uniform instruction on prior bad acts.[4] As for Officer Aguero's statements, Bynum did not challenge them until he made a motion for mistrial after the State rested.

---

[4] The court did instruct the jury

> Evidence has been received concerning other wrongful acts alleged to have been committed by the defendant. The defendant is not on trial for those acts. This evidence must be shown by clear proof to show motive or intent and for no other purpose. If you find other wrongful acts occurred then and only then may such other wrongful acts be considered for the purpose of establishing motive, intent, or absence of mistake, or lack of accident.
> You may consider the evidence in deciding how much weight and effect to give the evidence.

We presume juries follow the court's instructions. *State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010).

"Generally, a district court's decision not to grant a mistrial but to offer a cautionary instruction instead is entitled to broad deference," and "[c]autionary instructions are sufficient to mitigate the prejudicial impact of inadmissible evidence 'in all but the most extreme cases.'" *Plain*, 898 N.W.2d at 815 (citations omitted). We find the cautionary instruction here was sufficient in that this was not one of the extreme cases. *See*, *e.g.*, *State v. Garrison*, No. 04-0141, 2006 WL 138280, at *13 (Iowa Ct. App. Jan. 19, 2006) (noting several reasons a cautionary instruction in a double murder case was not sufficient to remove the unfairly prejudicial effect of irrelevant evidence suggesting the defendant was a drug dealer). We find no abuse of discretion in the court's denial of Bynum's motion for mistrial.

**C. Photos of service weapons.** Prior to jury selection, the prosecutor indicated that she intended to put on evidence "establishing the severity or seriousness of the response to this false report" and asked if the court preferred photographs of the weapons officers used or if the court would permit Officer Aguero to bring in the firearm. The State argued that it was required to show the false report was of an offense greater than a misdemeanor and the response of officers was relevant to that issue. Bynum objected to any evidence of the types of weapons used in response, arguing it was not relevant to whether the report was false or not. The court reserved ruling.

During trial, the court ruled that the question of whether the State had proved Bynum had reported an indictable misdemeanor or felony would be submitted to the jury along with general definitions of the three alleged crimes. During Officer Aguero's testimony, the court allowed the prosecution to publish two

photographs of weapons used by the responding officer: one photo of an AR-15 the officer used during the response and one of the standard issue handgun. The trial court overruled Bynum's argument concerning prejudice stating:

> The photos of the guns, I don't think that that's going to be as prejudicial because we see guns all the time on TV and photographs and I don't think that's going to have the same sort of emotional appeal that having an officer walking around in here with an AR-15 would certainly be jarring and could be—overly excite the jury and arouse passions that are not necessary and would not necessarily be greater than the probative value of that sort of evidence.

Even though we find the photos were of little relevance, we are not convinced Bynum has been deprived of a fair trial by their viewing by the jury. The two photos were used as demonstratives only. They were not admitted into evidence and were not sent in to the jury deliberations. Moreover, Officer Aguero testified about the "code two" response to the call and described the use of different response weapons when a report of guns is made without objection. *See State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014) ("Even if a trial court has abused its discretion [in an evidentiary ruling], prejudice must be shown before we will reverse."). Where evidence was merely cumulative, a defendant cannot establish the court's erroneous evidentiary error affected substantive rights. *State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011).

**D. Jury instruction regarding defense to carrying weapons.** Bynum was charged with making a false report alleging the crime of carrying weapons, burglary, or going armed with intent. Iowa Code section 718.6 applies to "persons who take affirmative steps to convey false information to law enforcement authorities." *State v. Ahitow*, 544 N.W.2d 270, 274 (Iowa 1996). The severity of the offense that is falsely reported is related to the severity of the punishment, i.e.,

reporting a criminal act that constitutes a simple misdemeanor is a simple misdemeanor, reporting a serious or aggravated misdemeanor or felony is a serious misdemeanor. Iowa Code § 718.6(1). *But see id.* § 712.7 ("A person who, knowing the information to be false, conveys or causes to be conveyed to any person any false information concerning the placement of any incendiary or explosive device or material or other destructive substance or device in any place where persons or property would be endangered commits a class 'D' felony.").

Here, the jury was instructed:

The State must prove [all] of the following elements of False Reports:
(1) On or about the March 10, 2016, the defendant reported information to law enforcement authority concerning the alleged occurrence of a criminal act.
(2) When reporting the alleged criminal act the defendant knew, as, defined in Instruction 18, the information was false.
(3) The defendant reported the crime of carrying weapons, burglary, or going armed with intent.

With respect to the offense of carrying weapons, the jury was instructed:

Carrying weapons is defined as: A person who goes armed with a firearm concealed on or about the person, or who, within the limits of any city, goes armed with a pistol or revolver, or any loaded firearm of any kind, whether concealed or not, or who knowingly carries or transports in a vehicle a pistol or revolver.

This definition is almost verbatim section 724.4(1), which defines the offense of carrying weapons.[5] The language requested by Bynum does not address the

---

[5] Section 724.4(1) provides:
Except as otherwise provided in this section, a person who goes armed with a dangerous weapon concealed on or about the person, or who, within the limits of any city, goes armed with a pistol or revolver, or any loaded firearm of any kind, whether concealed or not, or who knowingly carries or transports in a vehicle a pistol or revolver, commits an aggravated misdemeanor.

offense; rather, it addresses a statutory exception. *See id.* § 724.4(4) (listing exceptions).

Bynum asserts the trial court erred in denying his requested modification to the jury instruction defining the offense of carrying weapons to include the absence of a permit. The absence of a permit is not an element of the offense. *State v. Bowdry*, 337 N.W.2d 216, 218 (Iowa 1983) ("[W]e conclude that the General Assembly did not intend to make the absence of a permit an element of the offense."). The district court did not err in failing to give Bynum's requested instruction.

Finding no abuse of discretion in the trial court's denial of Bynum's motions for mistrial or its evidentiary and instructional rulings, we affirm.

**AFFIRMED.**