# IN THE COURT OF APPEALS OF IOWA

No. 18-1147
Filed February 19, 2020

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**DOUGLAS K. LINDAMAN,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Gregg R. Rosenbladt,

Judge.

A defendant appeals his conviction for assault with intent to commit sexual

abuse. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich,

Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

A jury found Douglas Lindaman guilty of assault with intent to commit sexual abuse. Through appellate counsel, Lindaman challenges the selection of that jury. He also criticizes the district court's allowance of expert testimony on the concepts of delayed reporting and grooming in sexual abuse cases. In a pro se supplemental brief, Lindaman contests his sentence and the charging instrument.[1] On the jury selection issue, we find Lindaman unable to show prejudice. We find no error in the district court's rulings on the expert witness, Lindaman's sentence, or the trial information. We thus affirm his conviction.

## I.    Facts and Prior Proceedings

Z.S. graduated from high school in 2012. Z.S. confided in his wrestling coach that about a year before graduation, Lindaman had inappropriately touched him. Then seventeen-year-old Z.S. worked as a farm hand for Lindaman and recalled the older man "grabbed" his penis during an encounter at the rural Floyd County property.

Foreshadowing that incident, Z.S. recalled Lindaman had "weird ways of talking" to his teenaged employees, including stark sexual references to masturbation and ejaculation. Lindaman also bought "massaging lotion" for Z.S. that he rubbed on the teenager's back almost daily. Z.S. felt uncomfortable with

---

[1] Lindaman filed his pro se supplemental brief in May 2019. Recent legislation prohibits consideration of supplemental pro se filings when the party is represented. *See* 2019 Iowa Acts ch. 140, § 31. But in *State v. Macke*, our supreme court held other provisions in that act were prospective only and did not apply to cases pending July 1, 2019. 933 N.W.2d 226, 235 (Iowa 2019). By extension, because this appeal and Lindaman's pro se brief were pending on July 1, 2019, we consider his pro se arguments.

the physical contact but did not disclose it at first because Lindaman told him to keep it "between you, me, and the fencepost."

In September 2015, the State charged Lindaman with sexual abuse in the third degree. The trial information alleged he committed a sex act by force or against the will of Z.S. *See* Iowa Code § 709.4(1) (2011). A jury convicted Lindaman, but the conviction could not stand because the district court did not conduct an adequate colloquy under *Faretta v. California*, 422 U.S. 806 (1975). Our supreme court summarily reversed and remanded with the State's agreement. Lindaman's second trial ended in mistrial after witnesses mentioned his prior offenses. This appeal arises from his third trial.

## II. Scope and Standards of Review

We apply an abuse-of-discretion standard to denials of challenges to potential jurors for cause. *State v. Jonas*, 904 N.W.2d 566, 570 (Iowa 2017). The district court enjoys broad discretion in making such rulings because trial judges must rule on juror disqualification "on the spot and in real time." *Id.* at 574.

Likewise, we review rulings on expert testimony for an abuse of discretion. *State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014). An abuse occurs when the district court exercises its discretion on grounds or for reasons plainly untenable or to an extent clearly unreasonable. *Id.* "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.*

We review the district court's "application of pertinent sentencing statutes" for correction of legal errors. *State v. Hensley*, 911 N.W.2d 678, 681 (Iowa 2018).

We apply that same review to a motion to dismiss a charge alleged in a trial information. *State v. Wells*, 629 N.W.2d 346, 351 (Iowa 2001).

### III. Analysis

### A. Jury Selection and Peremptory Challenges

On a change of venue to Cerro Gordo County, the district court summoned ninety-two prospective jurors. From that pool, a computer program randomly selected the names of twenty-eight citizens to participate in voir dire.[2] The court then allotted each party seven peremptory strikes. *See* Iowa R. Crim. P. 2.18(9), 2.18(15)(a)(2). During the selection process, the court removed four prospective jurors for cause.[3] *See* Iowa R. Crim. P. 2.18(5)(k). The court denied another six challenges for cause that Lindaman advanced.[4] In exercising his peremptory challenges, Lindaman struck four of those six prospective jurors. He used his other three peremptory strikes on different prospective jurors, leaving seated two of the jurors whom he alleged the court should have disqualified for cause.[5] At the end of the process, the court seated twelve jurors and two alternates.

---

[2] That number corresponds with the rules of criminal procedure. *See* Iowa R. Crim. P. 2.18(1) (requiring selection of a juror panel equal to twelve plus prescribed number of strikes); 2.18(9) (providing each party six strikes in class "C" felony prosecutions); 2.18(15) (a) (allowing four additional prospective jurors on panel if the court decides to have two alternate jurors).

[3] Lindaman identified himself to the potential jurors as a gay man and extensively explored their attitudes toward homosexuality. The district court removed one of those four potential jurors for "admitted bias in the area of sexual orientation." *See Jonas*, 904 N.W.2d at 575 (holding that in a criminal trial involving a gay defendant, the court should disqualify for cause any potential juror who expresses anti-gay bias during jury selection).

[4] The litigants refer to the jurors by the numbers assigned them on the judge's list. Lindaman challenged jurors 9, 11, 12, 19, 27, and 36.

[5] Lindaman struck jurors 11, 12, 27, and 36. Jurors 9 and 19 remained on the jury.

On appeal, Lindaman contends the district court abused its discretion in denying his six challenges for cause.[6] The parties debate both the district court's exercise of discretion in denying those for-cause challenges, as well as Lindaman's proof of prejudice.[7]

We'll take those issues in reverse order. The State argues even if the court should have granted all six challenges for cause, Lindaman cannot show prejudice under the test announced in *Jonas*. In that case, our supreme court recognized the difficulty in deciding when to afford defendants a remedy for a violation of rule 2.18(5)(k). *Jonas*, 904 N.W.2d at 583. The court observed: "The question of prejudice in cases involving improper denial of challenges to potential jurors for cause has obviously confounded the courts for some time." *Id.*

To flesh out that question, the *Jonas* court discussed three approaches to finding prejudice. *Id.* at 580–82. First, some courts require actual prejudice, meaning reversal is required only if a juror who should have been removed for cause "is actually seated on the jury." *Id.* at 580. A second approach is automatic reversal, meaning "prejudice occurs when a defendant uses a peremptory strike on a juror who should have been disqualified." *Id.* at 581. A third, middle ground finds prejudice if a defendant exhausts all of his or her peremptory challenges and then identifies another prospective juror to strike. *Id.* at 581–82.

---

[6] He alleges five of those prospective jurors expressed bias against gay people; the sixth prospective juror was concerned about deciding a sexual-abuse case because his wife had been sexually abused as a child.

[7] Lindaman's pro se brief contends the court improperly denied his request to mail a sixty-item questionnaire to the jury pool before trial rather than having panelists fill it out after they arrived and were sworn as potential jurors. The district court enjoys broad discretion to control voir dire. *State v. Martin*, 877 N.W.2d 859, 865 (Iowa 2016). We find no abuse of that discretion on this contention.

*Jonas* adopted the third theory of prejudice. *Id.* at 583. Under that three-pronged approach, Lindaman must show (1) the district court improperly refused to disqualify a potential juror under rule 2.18(5)(k); (2) that refusal caused the defense to expend a peremptory challenge under rule 2.18(9); and (3) Lindaman specifically asked the court for "an additional strike of a particular juror after his peremptory challenges had been exhausted." *Id.*

Concentrating on the third prong, the State posits Lindaman cannot satisfy the *Jonas* test for prejudice because he did not identify a particular juror for an additional peremptory challenge. *See id.* It is true Lindaman mentioned *Jonas* and suggested he would "probably be asking for extra peremptory challenges." But he never did.[8]

Counsel's reply brief calls the State's position "a misapprehension of fact." He claims Lindaman preserved error when he "sought to strike the two alternate jurors who had not yet been determined at the close of evidence." After the defense rested, the court said that following closing arguments it would excuse the last two jurors seated as the alternates. Lindaman objected. He lobbied the district court: "because of all of the strikes by the defendant with regard to cause that were negated, I felt that I should have a choice of the last two alternates then."

Contrary to Lindaman's reply argument, his unorthodox proposal that he could designate which jurors the court would discharge as the alternates at the end of trial did not satisfy the test for prejudice outlined in *Jonas.*

---

[8] The State insists Lindaman eliminated the opportunity for seeking more peremptory challenges by later consenting to the court's proposal to dismiss all the prospective jurors—except the remaining twenty-eight member panel.

Under rule 2.18(15),

> Prior to commencing jury selection, the court must determine on the record, with input of counsel, how many alternate jurors will be selected, the method used to identify the alternate jurors, and whether the identity of the alternate jurors should be revealed prior to commencement of trial or delayed until commencement of jury deliberations.

As the rule instructs, before trial, the court advised Lindaman and the prosecutor that the alternates would be the last two names on the judge's list of jurors. The State agreed. But Lindaman proposed that he should decide which jurors to discharge as alternates at the end of trial as a remedy if the court improperly refused to dismiss jurors for cause during the upcoming jury selection.

> If we have a situation where I've asked for a challenge for cause, it is denied by the Court, we have case law that I can ask for an extra preemptory challenge. I'm wondering logistically how that is going to be implemented. Are we going to implement it at the very end of the trial and eliminate someone at the defendant's request?

The court did not endorse Lindaman's hypothetical, but did not reject it outright, saying: "it is a cross the bridge when it comes to it sort of thing. But I think conceptually it could be done that way."

When it came to the end of trial, the prosecutor resisted Lindaman "being able to pick who the two alternates would be out of the jury." The State also argued the district court correctly denied Lindaman's for-cause challenges. The court agreed with the State and discharged the last two jurors seated as the alternates.

The district court's initial openness to Lindaman's hypothetical may have been misplaced. But regardless, allowing the defense to choose which jurors to discharge as alternates *before deliberations* is not equivalent to the defense identifying a particular juror for a peremptory strike *before the jury is sworn*. *See*

*Jonas*, 904 N.W.2d at 583. Why? Mainly because rule 2.18(15) forecloses Lindaman's scheme. The rule mandates: "The identity of the alternate jurors will be revealed either when the jury is sworn to hear the case or before the jury retires to deliberate." Iowa R. Cim. P. 2.18(15)(b). But in either case, the identity of the alternates is known to the court and the litigants before jury examination. *Id.*

Even if allowed under rule 2.18(15), too much is left in the balance by seating jurors who may harbor a bias and waiting to see how they react to the evidence. *See id.* (noting alternate jurors have the same "qualifications, powers, functions, facilities, and privileges" as principal jurors). Seeking another peremptory strike gives the district court a second chance "in a close case" to correct a faulty ruling on a motion to strike for cause before trial. *Jonas*, 904 N.W.2d at 583. In contrast, waiting until the end of trial risks having to substitute those questionable alternates for the principal jurors who may be unable to act.

On another note, *Jonas* aimed to discourage a "sandbagging scenario" where "the defense leaves an unqualified juror on the panel, awaits the verdict, and then appeals." *Id.* Lindaman's tactics look like sandbagging.[9] First, he dangled the idea of discharging the alternates if the court wrongly denied his challenges for cause, ironically, citing *Jonas*. When the court did deny six of his for-cause challenges, Lindaman opted not to peremptorily strike two of those six

---

[9] "Sandbagging" occurs when litigants remain silent about their objections and belatedly raise the error only if the case does not conclude in their favor. *Puckett v. United States*, 556 U.S. 129, 134 (2009). One court tracked the origin of the term "sandbag" to a poker game where "a bully or ruffian [used] a sandbag as a weapon to knock his intended victim unconscious." *Navajo Nation v. Urb. Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1252 n.5 (D.N.M. 2013).

prospective jurors. Those two jurors (jurors 9 and 19) were sworn and heard the evidence. Lindaman did not tell the court that he wanted to discharge those particular jurors as the alternates. He only asserted he "should have a choice of the last two alternates" because the court denied several of his for-cause challenges.[10]

Because Lindaman did not ask for any additional peremptory challenges, the district court did not have a chance to provide that remedy as contemplated in *Jonas. See id.* at 584. So Lindaman is not in the same spot as the defendant in *State v. Mootz*, 808 N.W.2d 207, 226 (Iowa 2012) (requiring reversal where a juror is seated who should have been subject to a peremptory challenge). Rather, we apply the actual prejudice test from *State v. Neuendorf*, 509 N.W.2d 743, 747 (Iowa 1993) (declining to presume prejudice from fact defendant was "forced to waste a peremptory challenge"). *See Jonas*, 904 N.W.2d at 584.

Under *Neuendorf*, Lindaman would be entitled to reversal only if he makes "some factual showing" that the district court's failure to sustain his for-cause challenges "resulted in a juror being seated who was not impartial." 509 N.W.2d at 746. Lindaman does not try to make that factual showing. Instead, he asks us to overrule *Neuendorf* and find he was prejudiced because he was forced to use peremptory strikes on jurors 11, 12, 27, and 36, and was not allowed to discharge jurors 9 and 19 as the alternates. As the court of appeals, we cannot undo

---

[10] In his pro se supplemental reply brief, Lindaman claims his proposal to strike the alternate jurors "fits" within rule 2.18(15) because under that rule, alternates "replace any juror who becomes unable to act or is *disqualified*, before the jury retires." We disagree. Lindaman quotes an outdated version of rule 2.18(15), and he also omits the old rule's phrase that the replacements would occur "in the order they were drawn."

precedent that our supreme court has reaffirmed. *See Jonas*, 904 N.W.2d at 583 ("*Neuendorf* remains good law where a judge improperly denies a challenge for cause but the defendant does not specifically ask for an additional peremptory challenge of a particular juror after exhausting his peremptory challenges under the rule").

Lindaman cannot succeed on this jury selection claim because he cannot show prejudice under the *Neuendorf* test. Even if we assume without deciding the district court abused its discretion by denying any of Lindaman's for-cause challenges, he is not entitled to a new trial.

**B.    Expert Testimony**

Lindaman next claims the district court abused its discretion in allowing forensic interviewer Katie Strub to testify as an expert. He contends because she did not interview Z.S., the only purpose of her testimony was to bolster the teenager's credibility.

Strub worked as a supervisor at Allen Hospital's Child Protection Center in Waterloo. She has a bachelor's degree in psychology and a master's degree in mental health counseling, both from the University of Northern Iowa. She is a licensed mental health counselor. She has experience as a case worker for the Department of Human Services. And during her eight years at the child protection center, she conducted more than 1500 forensic interviews with children and dependent adults. She has received ongoing training on sexual assault and child abuse dynamics.

In a pretrial conference, the State explained Strub would testify to "grooming-type behaviors" that are "often used by various perpetrators, as well as

issues with delayed reporting." The prosecutor recognized the witness could only talk about those concepts "generically" but could not say "it happened in this case." The court allowed Strub to testify but ruled "the State must take care to not elicit testimony from the expert witness that is 'vouching' for the complaining witness's credibility."

At trial, Strub testified "most of the time, children do not report abuse as it's occurring." She suggested several reasons children might delay their disclosures, including fear they won't be believed or concern "something bad will happen" to them or their family members if they disclose. Strub added, "[S]ometimes kids don't tell because they're ashamed."

Strub also shared "various techniques that perpetrators of sexual assault use." She explained "someone may present themself in the community or to a child's parents as someone who is very trustworthy or who has something to offer them." Strub testified she tried to keep up to date on research in "grooming" which she defined as "a process of establishing trust with the caretakers of a child and also with the child so that a manipulation process can happen with an end result being the hope to sexually assault the child." She explained the perpetrator's strategy of "desensitization" differs in every case, but "generally speaking, it's a process of trying to test limits."

On cross examination, she confirmed she did not interview Z.S. or any other witnesses. When Lindaman started to ask Strub about evidence of grooming in this case, the State objected. Outside the presence of the jury, the district court advised: "[w]e need to stay clear of the vouching and any ultimate fact conclusions or legal conclusions or anything else, asking the expert to give that."

Despite the district court's caution, Lindaman now argues allowing Strub to testify violated Iowa Rule of Evidence 5.702. That rules states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Iowa R. Evid. 5.702.

Lindaman contends Strub's testimony did not aid the jury because she had "no personal knowledge of the case." He complains none of the reasons she listed for delayed disclosure appeared in the trial testimony. Lindaman also urges Z.S. did not wait a long time before reporting the inappropriate touching. Given those circumstances, Lindaman argues the expert testimony was misleading and confusing for the jurors. On the grooming issue, Lindaman contends "Strub was allowed to lend credibility to the State's witnesses' testimony, especially Z.S., even though she had not interviewed anyone associated with the case."

In response, the State argues Strub's delayed disclosure testimony aided the jury because Z.S. did not immediately report the sexual contact to authorities "as laypersons might expect all victims would do." The State also contends the district court followed our supreme court's direction in *State v. Dudley* about the line between permissible expert testimony and impermissible vouching. *See* 856 N.W.2d 668, 676 (Iowa 2014).

Contrary to Lindaman's argument, the district court did not abuse its discretion in allowing Strub to testify about why child victims may delay reporting their sexual abuse. *See State v. Payton,* 481 N.W.2d 325, 327 (Iowa 1992). Strub avoided referring directly to Z.S. and only testified generally about child victims.

*See Dudley*, 856 N.W.2d at 676. In addition, Strub's explanation of grooming did not amount to a direct or indirect comment on the credibility of Z.S. or the evidence against Lindaman. *See State v. Leedom*, ___ N.W.2d ___, ___, No. 18-1947, 2020 WL 391787, at *11 (Iowa 2020). Strub did not offer her opinion on Z.S.'s truthfulness nor did she assert his behavior matched the typical behavior of abuse victims. We find no cause for reversal on this evidentiary ground.

### C. Sentencing Credit for Time Served

In his pro se brief, Lindaman claims he has spent 420 days in prison, but the district court did not count that time against his current sentence.

In response, the State points out the sentencing order *did* direct that Lindaman receive "credit for time served in connection with this case." The court made a similar statement at the sentencing hearing. The State asserts: "Any error in calculating that credit should be litigated in an action where the Department of Corrections can create a record."

In his pro se reply brief, Lindaman cites Iowa Rule of Criminal Procedure 2.26(1)(f) for the proposition that he "shall receive full credit for time spent in custody on account of the offense" for which he is convicted. We read that rule in conjunction with Iowa Code sections 901.6 and 903A.5.

We look first to section 901.6, which requires a statement of the days credited to the defendant to be "incorporated into the sentence" as provided in section 903A.5. *State v. Hawk*, 616 N.W.2d 527, 529 (Iowa 2000) (recognizing an accurate number may not be available to the sentencing court). Section 903A.5 governs the terms of an inmate's discharge from a penal institution and directs the county sheriff to perform the calculation of days credited. *Id.* (rejecting "Hawk's

contention that the trial court must, at sentencing or as part of a written judgment entry, announce the credit to which the defendant is entitled for time served").

Lindaman presents no proof those governing statutes were not followed. *See id.* at 530. Thus, no ground for reversal appears.

### D. Charging Instrument

In his final pro se issue, Lindaman attacks the ethics of the prosecutor for citing an incorrect year for the sexual abuse statute in the trial information. He also claims the evidence did not support the greater charge. The State responds that the citation to the code year is immaterial and the statutory language had not changed. The State also contends the prosecutor had a good faith basis to believe Lindaman committed sexual abuse in the third degree.

We agree with the State on both points. The date cited in the information for the relevant statute did not impact the charging decision and did not prejudice the defense. *Cf. State v. Brown,* 400 N.W.2d 74, 77 (Iowa Ct. App. 1986) ("The date fixed in the indictment or information for the commission of a crime is not material, and a conviction can be returned upon any date within the statute of limitations."). Plus, the minutes of evidence supported the charging decision. *See State v. Petersen,* 678 N.W.2d 611, 614 (Iowa 2004) ("When the court approves the trial information, it determines whether there is probable cause to detain the defendant to answer the charge."). Lindaman has no right to relief on this claim.

**AFFIRMED.**