# IN THE COURT OF APPEALS OF IOWA

No. 20-0704
Filed November 3, 2021


**BRITTANY RAE BEEK,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____


Appeal from the Iowa District Court for Floyd County, Christopher C. Foy, Judge.


The applicant appeals the denial of her application for postconviction relief.
**AFFIRMED.**


Travis M. Visser-Armbrust of TVA Law PLLC, Mason City, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee State.


Considered by Bower, C.J., Schumacher, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**POTTERFIELD, Senior Judge.**

Brittany Beek appeals the denial of her application for postconviction relief (PCR). She challenges the district court's ruling, arguing it should have found she received ineffective assistance of trial counsel and granted her application. On appeal, Beek (1) maintains trial counsel breached an essential duty when she failed to object to improper vouching testimony by one of the State's experts and (2) challenges counsel's strategy as it pertained to confronting the complaining witnesses at the underlying criminal trial.

**I. Background Facts and Proceedings.**

After a jury convicted Beek of sexual abuse in the third degree in 2016, she challenged her conviction and sentence on appeal. A panel of this court affirmed. *State v. Beek*, No. 16-1837, 2017 WL 6033732, at *3 (Iowa Ct. App. Dec. 6, 2017). In that opinion, we laid out the facts as follows:

> On May 10, 2016, two juvenile girls, S.R. and K.S.-H., respectively sixteen and fifteen years old at the time, ran away from a youth shelter. The following day, while they were still on the run, S.R. contacted Beek, a twenty-seven year old, for a place to stay. Beek picked the girls up and eventually transported them to her home. That evening, the three of them watched a movie, *Fifty Shades of Grey*, in Beek's bedroom and "hung out until about one or two in the morning." In the night, Beek pursued sexual activities with the girls, inserting a dildo into S.R.'s vagina and using a pink vibrator and glass dildo on K.S.-H. Both girls unequivocally testified at trial that Beek inserted the various sex toys in their vaginas.
>
> The next day, the [girls] contacted S.R.'s ex-boyfriend, Cameron, for a ride and covertly left Beek's residence. After picking up the girls, Cameron advised them he was going to turn them in to law enforcement. After a struggle, the girls got away from Cameron and "ran through a field." When police officers subsequently found the girls in the field, S.R. was transferred to a detention facility and K.S.-H. back to the youth shelter. S.R. advised the staff at her detention facility of the prior evening's events. She subsequently relayed the same information to a detective with the local sheriff's office. Both girls were transported to the hospital for medical

examination and forensic interviews. Both girls advised medical personnel and interviewers that Beek sexually assaulted them.

Law enforcement obtained a warrant to search Beek's residence. Upon a search of Beek's bedroom, officers found various sex toys and some of the girls' clothing. In a subsequent interview with a police officer, Beek verified the girls spent the night at her house the prior evening but denied any sexual contact occurred. The division of criminal investigation performed DNA testing on two of the sex toys. S.R.'s DNA was found on one of the toys. Two DNA profiles were found on the other toy, one belonging to Beek. There was an insufficient amount of DNA present to determine the identity of the second contributor.

Beek was charged with two counts of third-degree sexual abuse, one count as to K.S.-H. and one count as to S.R. A jury found Beek guilty of the count pertaining to K.S.-H.[1] The district court denied Beek's subsequent motion for a new trial and in arrest of judgment. The court sentenced Beek to a term of incarceration not to exceed ten years, ordered her to register as a sex offender, placed her under the supervision of the Iowa Department of Corrections for life, and imposed a suspended fine, civil penalty, victim restitution, and various surcharges.

*Beek*, 2017 WL 6033732, at *1.

Beek filed her application for PCR in November 2018, and the trial took place in January 2020. Beek called her trial counsel as a witness and questioned why counsel did not object to the forensic interviewer's testimony at the underlying trial. Counsel testified she was aware of the case law prohibiting an expert from commenting on another witness's credibility but did not object "because there was no vouching" by the forensic interviewer. Beek also asked trial counsel whether she believed she "place[d] the State's prosecution against meaningful adversarial

---

[1] The statutory formulation under which Beek was convicted provides: "A person commits sexual abuse in the third degree when the person performs a sex act" on another, "[t]he other person is fourteen or fifteen years of age," "[t]he person is four or more years older than the other person," and they were "not at the time cohabiting as husband and wife." Iowa Code § 709.4(1)(b)(3)(d) (2016).

testing" by cross-examining the complaining witnesses. Counsel answered in the affirmative, and then the following exchange occurred:

> Q. Well, one of them, you didn't even cross-examine, did you? A. No.[2]
>
> Q. So you didn't place the State's case against meaningful adversarial testing, did you? A. I didn't think I needed to cross-examine her because most of her answers came out that she didn't remember or that it was different, and so I didn't feel that there was a need to go back into things when most of her answers were, I don't remember.
>
> Q. And so on Volume 1 of the trial transcript, pages 161 through 166 entails the cross-examination of S.R. And at page 164, the only use of the deposition was made by you, and there was no recross-examination. Is that correct? A. Yes.
>
> Q. And Volume 1 of the trial transcript, page 180 to 184, cross-examination of [K.S.-H], there was no use of the deposition whatsoever? A. No.
>
> Q. And there were lots of instances where the alleged victim does not recall or remember, starting at direct examination on page 167, as you have just mentioned? A. Yes.
>
> Q. And you're using that as a reason for why should I cross-examine her, she said she doesn't know anything or doesn't remember? A. Because her testimony directly contradicted S.R.'s and we felt it was better—well, I felt it was better to leave those contradictions in rather than question her again and have her change her mind.

The district court denied Beek's PCR application. In its written ruling, the court concluded "no witness improperly vouched for the credibility of either [K.S.-H.] or S.R." Without impermissible vouching, there was no need for trial counsel to object. *See State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015) ("Counsel does not fail to perform an essential duty by failing to raise a meritless objection."). As to counsel's failure to use pre-trial depositions to impeach K.S.-H and S.R., the court found the trial attorney made a strategic decision that "fell within the range of

---

[2] Insofar as PCR counsel actually meant to question about cross-examination (as opposed to impeachment), this is factually inaccurate. Trial counsel cross-examined both of the complaining witnesses.

normal competence" and the "approach taken . . . was reasonable, even when viewed with the benefit of hindsight."[3]

Beek appeals.

**II. Discussion.**

On appeal, Beek re-raises two of the claims she made to the district court—that trial counsel provided ineffective assistance when she failed to object to improper vouching testimony by the forensic interviewer and inadequately confronted the complaining witnesses at trial.

We generally review an appeal from the denial of application for PCR for correction of errors at law. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). "However, when the applicant asserts claims of a constitutional nature, our review is de novo. Thus, we review claims of ineffective assistance of counsel de novo." *Id.* (citation omitted).

"[A]ll [PCR] applicants who seek relief as a consequence of ineffective assistance of counsel must establish counsel breached a duty and prejudice resulted." *Castro v. State*, 795 N.W.2d 789, 794 (Iowa 2011). "We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Lamasters*, 821 N.W.2d at 866 (citation omitted).

---

[3] Beek raised additional arguments in her PCR application before the district court, all of which were denied. She references the other issues in passing in her appellate brief, but she did not develop those arguments on appeal so we do not consider them. *See* Iowa R. App. P. 6.903(2)(g)(3); *see also In re Estate of Troendle*, No. 19-2034, 2021 WL 3076361, at *3 n.3. (Iowa Ct. App. July 21, 2021) (rejecting appellant's attempt to incorporate all of the arguments raised to the district court by simply stating they were incorporated because "[t]he appellant must present and develop their arguments in their appellate brief. It is not for this court to chase down the parties' arguments; it is for the parties to present their argument before this court for our consideration").

**A. Impermissible Vouching.**

Iowa case law prohibits an expert witness from "giv[ing] testimony that directly or indirectly comments on the child's credibility." *State v. Jaquez*, 856 N.W.2d 663, 665 (Iowa 2014). Our supreme court has found this prohibition was violated when an expert testified a child's "demeanor was 'completely consistent with a child who has been traumatized.'" *Id.* But experts can state facts as they witnessed them during an interview with a child, such as testifying the child's "statements were consistent throughout the interview." *See State v. Dudley*, 856 N.W.2d 668, 678 (Iowa 2014) ("We do not find this statement crossed the line. [The forensic interviewer] was merely stating the fact that throughout the interview [the child] never changed her story as to the events with [the defendant.] The jury is entitled to use this information to determine the [child's] credibility.").

Here, Beek maintains counsel had a duty to object to the forensic interview's testimony that S.R. "appeared pretty forthcoming" and "[h]er demeanor was pretty consistent." Additionally, she argues counsel should have objected to the interviewer's testimony that the information she gathered from both girls was "consistent."

We recognize that "forthcoming" can mean "characterized by candidness." *Forthcoming*, Merriam-Webster, https://www.merriam-webster.com/dictionary/forthcoming (last visited Oct. 20, 2021); *see also Candidness*, Merriam-Webster, https://www.merriam-webster.com/dictionary/candidness ("Expressing opinions and feelings in an honest and sincere way."). But it can also mean "responsive," which the context makes clear is how the forensic interviewer used the word. *See Forthcoming*, Merriam-Webster, https://www.merriam-webster.com/dictionary/

forthcoming. The interviewer described S.R. as "pretty forthcoming" while K.S.-H. "was more reserved. She did not really want to answer [the interviewer's] questions." Explaining the witness's willingness to talk is not vouching for their credibility, so trial counsel did not have a duty to object.

Similarly, while Beek objects to the interviewer's use of "consistent," we note that "consistent" is not a buzzword that our supreme court has broadly outlawed. Instead, as we already distinguished, an interviewer is not allowed to tell the jury the child acts like or exhibits the symptoms of a child who has, in fact, been sexually abused. But an interviewer can describe the facts they witnessed during the interview. *Compare Jaquez*, 856 N.W.2d at 665 *with Dudley*, 856 N.W.2d at 678. The interviewer's first use of "consistent," as used to describe S.R.'s demeanor, seems to convey S.R. did not vary in emotions as she spoke. The interviewer testified that S.R's "demeanor was pretty consistent. She was somewhat emotional, but not overly emotional." This is within the acceptable testimony for the expert. *See State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014) (concluding the expert's testimony that "factually describe[d] [the child's] conduct when talking to [the interviewer]" did not constitute impermissible vouching). The interviewer's second use of "consistent"—to explain that the information she received from S.R. and K.S.-H. in their separate interviews matched—is also not vouching. An expert can report a single witness's story did not change, i.e. remained consistent, just as the expert can report that the story of two separate witnesses matched. This factual testimony as to whether the two stories were the same does not comment on whether the witnesses were telling a true or false version of the alleged events; it just relays that they both reported the same thing.

Because the statements Beek challenges do not constitute impermissible vouching, trial counsel did not have a duty to object to them. And because Beek cannot prove counsel breached an essential duty, we agree with the district court that this claim fails.

**B. Confronting Witnesses.**

In her appellate brief, Beek argues "[t]here were a number of inconsistencies between what the witnesses said at deposition and what they said at trial and trial counsel did not use those transcripts to impeach the witness." But Beek does not develop this argument adequately for our review, as she does not point to any specific trial testimony of K.S.-H. or S.R. that should have been impeached by their prior deposition testimony.

Beek also asserts trial counsel "simply did not cross-examine one of the victims." But this is factually incorrect; trial counsel cross-examined both S.R. and K.H.-S.

Additionally, Beek lists "[s]ome . . . odd statements" that the complaining witnesses made at trial. It is not clear what she believes her trial attorney should have done to challenge these statements; Beek's subjective belief about the relative oddness of a statement is not grounds for a legal objection. Going a step further, it is not clear what about these statements strikes Beek as "odd." One of the statements Beek complains about, S.R. testifying that her ex-boyfriend attempted to zip-tie the girls' hands (as some sort of citizen's arrest), was testified to by both S.R. and the ex-boyfriend who did the zip-tying. During direct examination, the ex-boyfriend testified:

> Q. And what did you do at the travel plaza, or what happened there?  A. I told them that I was taking them back.  And then they got aggressive. . . .  So I fought with [K.S.-H.] for a little bit, . . . and then they both took off.
> Q And did you also try to restrain [S.R.]?  A. Yes.
> Q And how did you try to restrain her?  A. Zip ties.

Finally, Beek lists trial testimony of K.S.-H. and S.R. that she asserts was inconsistent.  But again, it is unclear what she thinks trial counsel should have done about it.  In her appellate brief, she merely lists the statements and then says, "With all of these inconsistent statements, the trial attorney needed to show the jury just how consistent it was."  This does not specify an essential duty she believes counsel breached.  And there is no rule that prevents witnesses from testifying in ways that differ from each other.

Giving Beek some benefit of the doubt, we note "a lawyer may properly examine a witness about an event by pointing out the factual differences between the witness's testimony and the testimony of other witnesses to the same event." *Nguyen v. State*, 707 N.W.2d 317, 324–25 (Iowa 2005).  "However, it is not proper to take the further step of asking one witness if another witness is untruthful, mistaken, or to otherwise ask the witness to comment on the credibility of another witness." *Id.* at 325.  Here, Beek's trial attorney used closing argument to point out to the jury some inconsistencies in the two complaining witnesses' testimony.  Like the district court, we conclude this was a reasonable strategy. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) ("[I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment.").  So Beek has not

proved counsel breached an essential duty, and this claim of ineffective assistance also fails.

**III. Conclusion.**

We agree with the district court that Beek failed to prove her claims of ineffective assistance. We affirm the denial of her PCR application.

**AFFIRMED.**