# IN THE COURT OF APPEALS OF IOWA

No. 22-1127
Filed July 13, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KEVIN RAY BERGMAN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, James M. Drew, Judge.

Kevin Bergman appeals his convictions for willful injury causing bodily injury and going armed with intent. **AFFIRMED.**

Nellie O'Mara of O'Mara Law Office, PLLC, Mason City, for appellant.

Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Tabor and Greer, JJ.

**BOWER, Chief Judge.**

Kevin Bergman, after a confrontation in his neighbor's yard, shot his neighbor in the leg. He now appeals his subsequent convictions for willful injury resulting in bodily injury and going armed with intent, arguing he was justified in his actions, the offense of going armed with intent is unconstitutional on its face, and the court abused its discretion in limiting his wife's testimony. We affirm.

**I. Background Facts.**

Sometime after 1:00 a.m. on November 9, 2020, police were dispatched to investigate a 911 call from Greg's adult daughter, Kendra, reporting Greg had been shot. When they arrived, they found Greg in his backyard on the ground with a gunshot wound to his right leg. Bergman was in the alley behind Greg's and his adjoining properties. Bergman handed over his firearm and told officers Greg was seen peeking over Bergman's six-foot fence so Bergman chased Greg back into Greg's yard where punches were exchanged. Bergman said Greg came at him with a stick "so I shot him." Charges were filed against Bergman.

In a motion in limine, the defense asserted Iowa Code section 708.8 (2020), which prohibits going armed with intent, "is unconstitutional when the person has been issued a lawful permit, as the Defendant has been." At a hearing on the motion in limine, the court questioned the defense how the statute was unconstitutional where it required the State to prove the person carried the firearm "with intent to use without justification." The defense attorney stated, "[W]e will be addressing this in our jury instructions better just because the jury instructions for this charge do not match the current law." Ruling on the issue was deferred. When

jury instructions were later discussed, the defense made no further constitutional argument.

At trial, Greg testified he and his dog went outside late at night because the dog was "barking uncontrollably." He saw a man walking in the alley, waving his hands, and yelling things like, "there he is." At first, Greg did not recognize the shirtless person, thinking it was a drug user. But he recognized Bergman as he got closer. Greg testified his dog "took off" when Bergman started running toward him. Fearful, Greg called to his dog while retreating to his house. Greg said he was trying to get inside, but the screen door slammed on his hand and Bergman hit him twice[1]; Bergman then held him and was asking insulting questions. The men continued to scuffle, but Kendra came to the door. She asked Bergman why he was on their property. Kendra and Greg told Bergman to leave several times.

Eventually, Bergman began to walk back to the alley. Greg followed Bergman, concerned his shed might be unlocked and wanting to protect his property. Greg testified he turned to lock the shed as Bergman neared the alley. As Greg turned to go back to the house, Bergman shot him in the right leg.[2] Greg yelled at Bergman, "You son of a bitch. You shot me." Greg testified he did not see the gun.

Kendra testified about the incident, stating she was awakened by the shouting and came to the door. She saw Bergman in the driveway beside their house and asked why he was there. Both she and Greg told Bergman to get off the property. When Bergman headed toward the alley, verbal exchanges

---

[1] Greg testified the blows knocked a gold cap from his tooth.
[2] The bullet shattered Greg's tibia, which required hospitalization and surgery.

continued. Kendra said Greg headed toward the alley as well because the dog was still loose. She stated Greg tripped over a stick and threw the stick to the side, and as he turned back toward the house Bergman pulled a gun from his pocket and shot Greg. Kendra recorded portions of the men's encounter on her cell phone, and those recordings were played for the jury. Because it was dark, little is visible on the recordings, but the profane verbal exchange between the two men and the gun shot are audible.

Criminal Investigator Terrance Prochaska testified that when he arrived at the scene he spoke with Bergman. Investigator Prochaska described Bergman as being "wound up" while telling him about ongoing problems with his neighbor Greg:

> [H]e had found [Greg] at his back fence area. He continued to talk about the ongoing problems, neighborhood problems they'd been having, and then explained that he had chased [Greg], when he found him there, into his backyard and up to his—up to the back of his house. From there he said they—they got in a fistfight or some sort of a—a fight, physical fight, and he then was headed back to his—back to the alley where he told me that there was a—that [Greg] had picked up a stick and caused him to shoot him.

The investigator testified it did not appear Greg was shot having a stick in his hand because the stick was found away from where Greg was laying on the ground.

Tonya, Bergman's wife, testified on behalf of the defense. She testified they built the six-foot fence around their property because of "issues with" Greg, including him "sexually grab[bing] himself and say[ing] things to the girls" and Tonya while the children played on their trampoline. After an objection by the State, the court reminded the defense questions should focus on more recent events than two years ago. Tonya stated the fence was built in June 2020. In addition, the Bergmans also installed "blackout light fixture coverings," motion

sensors, and security cameras throughout their house. They also installed a trail cam in another neighbor's tree focused on their fence in the alley. The defense offered pictures dated November 3, 2020, of a hooded man at their back fence who Tonya identified as Greg.[3] She also testified someone spray painted a vulgar phrase on the fence on October 24, 2020—she asserted the phrase was similar to those used by Greg when insulting her.

Tonya then testified about hearing a "[l]oud commotion of my fence" at about 1:15 a.m. on November 9. She woke Bergman and told him there was something in their back yard. Bergman left to investigate, and Tonya went to the window and started recording with her cell phone. She stated she did not call 911 because she did not have a landline and "needed to record" what was going on. Tonya's cellphone recordings were not given to police. The audio portions of the recordings were digitally enhanced and submitted at trial.

Bergman testified Tonya told him she saw someone peering over their fence after 1:00 a.m. He grabbed his pants and slippers; his loaded firearm (for which he had a permit) was still in his pants' pocket. Bergman ran outside, through one neighbor's yard to the alley, and chased someone near his fence. He chased the man through Greg's yard to Greg's door, recognized it was Greg, and the two exchanged punches near Greg's side door. Greg fell into the side of his house.

Bergman testified Greg's daughter came outside at that time and started recording with her phone, so he started walking through Greg's backyard, and Greg followed him. "And I—and I worked my way to the alley, but before I had got

---

[3] The photos are not clear images.

to the alley, he had picked up that branch and started that." Bergman stated, "He swung it at me twice and it was the third attempt at him swinging it is when I fired."

When asked what was going through his mind, Bergman testified:

> What's going through my mind is I just want to get home and call, and then I think that, you know, with the numerous times that we've called the police and never had any results, no results, that in the back of my mind I guess I was thinking that if I do make it home and I call, will it really do me any good because of the previous accounts that we've had with the law enforcement that nothing ever got done.

Bergman said he was in the alley and not in Greg's yard when he fired his gun. Though he testified he has never shot his gun before—it took him a "split second" to pull his gun from his pocket, chamber a round, and fire. The following exchange occurred:

> Q. Now, you've listened to the video? A. Yep.
> Q. And you're yelling insults—A. Yep.
> Q. —just the same? A. Right.
> Q. It doesn't sound like you're afraid. A. I believe I carried my—my fear and anger, in a sense, in a—being upset.
> Q. Does it make you angry when you're afraid? A. Well, it— yeah, it would depend on what made me angry, but in that moment I was afraid because—yeah. And I brought my fear out in anger.
> Q. So you fire your gun? A. Yes.
> Q. Then what do you do? A. Then I put it back into my pocket, I tell [Greg's daughter] to call 911, and I wait.

The jury found Bergman guilty of willful injury causing bodily injury and going armed with intent.

In a motion in arrest of judgment, the defense argued "going armed with intent is unconstitutional on its face in a constitutional carry state"[4]:

---

[4] Effective July 1, 2021, "The availability of a professional or nonprofessional permit to carry weapons under this chapter shall not be construed to impose a general prohibition on the otherwise lawful unlicensed carrying or transport, whether openly or concealed, of a dangerous weapon, including a loaded firearm."

Even with the qualification under Iowa Code [section] 708.8 that the intent should not be inferred from the mere carrying or concealment of any dangerous weapon, this does not match the current state of the law.

The law itself is unconstitutional because it is unclear of when the intent is necessary. If the intent to use the dangerous weapon without justification is only when the firearm is used, then the law is unconstitutional on its face. The requirement of movement and with this caution about inferring intent, causes problems with how this law is written. If one is allowed to carry a weapon under Iowa law legally without a permit, it would seem to follow that the intent cannot be from just one moment in time. The law considered as a whole, would necessitate that the intent would have to be shown when the person was moving from one place to another with the firearm rather than by one snapshot where the dangerous weapon is used.

At the hearing on the motion in arrest of judgment, the district court noted:

I want to address the constitutional arguments first. All statutes are cloaked with a heavy presumption of constitutionality. In this case I don't believe that the statute is inconsistent with a right to carry because there's a—there's other requirements in the statute, such as the intent to use and the moving from place to place, which that—if you didn't have the intent to use, obviously, then we might have a problem, but I don't see any inconsistencies there. And I overrule the arguments that the statute is unconstitutional.

The court entered judgment and imposed sentence.

Bergman appeals, contending there is insufficient evidence to support his convictions for willful injury causing bodily injury and going armed with intent. He also claims the court abused its discretion in limiting his wife's testimony about her interactions with Greg to the year before the shooting.

Bergman also asserts the offense of going armed with intent is unconstitutional on its face. We will not address Bergman's constitutional claim on appeal. Even if we bypass problems with preservation of error, his argument is

---

2021 Iowa Acts ch. 35, § 13 (codified at Iowa Code § 724.5 (2021)). This provision was not in effect at the time of the offense.

premised on a statute that was not in effect at the time of the offense. "Any answer on our part would amount to an advisory opinion, which we have neither a duty nor authority to render." *Wang v. Baumgartner*, No. 18-0926, 2019 WL 1055857, at *1 (Iowa Ct. App. Mar. 6, 2019); *see Vasquez v. Iowa Dep't of Hum. Servs.*, 990 N.W.2d 661, 668 (Iowa 2023) (noting courts do not provide advisory opinions).

## II. Scope and Standards of Review.

"In evaluating sufficiency-of-evidence claims, we will uphold a verdict if substantial evidence supports it. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Wilson*, 941 N.W.2d 579, 584 (Iowa 2020) (quoting *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019)).

We review district court rulings on the admissibility of evidence for an abuse of discretion and will reverse "only upon showing the court exercise[d] its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Trane*, 934 N.W.2d at 455 (alteration in original) (internal quotation marks and citation omitted).

## III. Discussion.

On appeal, Bergman contends there is insufficient evidence to support either charge. To establish willful injury causing bodily injury, the marshalling instruction provided the State was required to prove (1) Bergman shot Greg *without justification*, (2) Bergman specifically intended to cause a serious injury to Greg, and (3) the shot caused a bodily injury to Greg.

To establish the offense of going armed with intent, the marshalling instruction provided the State had to prove (1) Bergman was armed with a firearm,

(2) Bergman was armed with the specific intent to use the firearm against another *without justification*, and (3) Bergman moved from one place to another while armed.

Bergman asserts his act of shooting Greg "was done in response to what appeared to be an imminent attack and not done with the specific purpose in mind of causing injury. [Bergman] attempted to halt the advance of his neighbor, who was swinging a tree branch at him and shouting 'I'm going to kill you.'"

"'Specific intent is seldom capable of direct proof.' Therefore, specific intent will often 'be shown by circumstantial evidence and the reasonable inferences drawn from that evidence.'" *State v. Ernst*, 954 N.W.2d 50, 55 (Iowa 2021) (internal citations omitted). "[T]he jury can believe some of a witness's story while rejecting other parts. Likewise, the jury is free to credit portions of both sides' evidence and conclude the real story is somewhere in the middle." *State v. Shorter*, 945 N.W.2d 1, 10 (Iowa 2020); *see also State v. Dudley*, 856 N.W.2d 668, 677 (Iowa 2014) ("In our system of justice, it is the jury's function to determine the credibility of a witness.").

The jury was instructed:

> A person is justified in using reasonable force if he reasonably believes the force is necessary to defend himself from any imminent use of unlawful force.
> If the State has proved any one of the following elements, the defendant was not justified:
> 1. The defendant started or continued the incident which resulted in injury.
> 2. An alternative course of action was available to the defendant.
> 3. The defendant did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him.

4. The defendant did not have reasonable grounds for the belief.

5. The force used by the defendant was unreasonable.

On our review, we conclude the jury could reasonably have found the State proved any one of the five elements. The jury was entitled to consider Bergman chased Greg into his own yard and to his back door. There was evidence presented Bergman had other courses of action available to him. The jury could have been unconvinced Greg was menacing Bergman with a stick, or that Bergman reasonably feared for his life or safety. *See State v. Stallings*, 541 N.W.2d 855, 857 (Iowa 1995) (holding that jury could have rejected defendant's claims that shooting victim was "trying to get at him" and that he "was afraid for his life," and the evidence was sufficient to support a willful injury conviction). We discern no reason to disturb the jury's findings that Bergman specifically intended to seriously injure Greg when he shot him in the leg, Bergman moved from one place to another while armed, and Bergman had the specific intent to use the firearm against Greg without justification.

Bergman next asserts the court abused its discretion in limiting Tonya's testimony about Greg's "many years" of hostility. He asserts, "The ongoing threats of violence, inappropriate gestures and general harassment of this family went to why Mr. Bergman was so afraid of [Greg] on November 9, 2020." We are not convinced.

At a pretrial conference, defense counsel stated their intention to introduce testimony "about the year leading up to this and all of the actions that [Greg] and [Kendra] did to the family, including police reports that were taken at that time." The State objected, "I think a year beforehand is extremely outside the realm of

information relevant to the defense of self-defense justification. These . . . go into prior bad acts, they go into what my motion in limine was that I thought we had an agreement on." The hearing judge left the issue for the trial judge to decide.

Tonya and Bergman testified about events prior to the shooting, and several police reports were admitted. Bergman did not make an offer of proof for any other evidence he wished to offer. We find no abuse of discretion.

To summarize, Bergman's constitutional claim is based on a statute that was not yet in effect at the time of the offense and thus is inapplicable; we do not engage in advisory opinions. There is substantial evidence of specific intent supporting Bergman's convictions. The district court did not abuse its discretion in limiting Tonya's testimony to the year before the incident from which the charges arose. We affirm the convictions.

**AFFIRMED.**