# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0554
Filed April 15, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Angel Manuel Perez-Nieto,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Story County,
The Honorable Stephen A. Owen, Judge.

———————————

**AFFIRMED**

———————————

Alan R. Ostergren of Alan R. Ostergren, PC, Des Moines, attorney for
appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Ahlers, P.J., Sandy, J., and Bower, S.J.
Opinion by Sandy, J.

**SANDY, Judge.**

This appeal presents two distinct claims. First, Angel Manuel Perez-Nieto challenges the sufficiency of the evidence supporting the jury's verdicts. Second, he argues the district court abused its discretion in admitting expert testimony that crossed the line into impermissible vouching. The first claim asks us to revisit the jury's assessment of the evidence; the second asks whether the expert strayed beyond the limited role permitted in explaining the general dynamics of abuse. Because the record supports the verdicts and the challenged testimony remained within permissible bounds, we affirm.

## BACKGROUND FACTS AND PROCEDURE

The State charged Perez-Nieto with two counts of indecent contact with a child, in violation of Iowa Code section 709.12 (2023). The charges stemmed from allegations that Perez-Nieto engaged in inappropriate physical contact with his minor stepdaughter, J.M., over a period of years.

At trial, the evidence showed J.M. lived with her mother and that Perez-Nieto had been a parental figure in her life for several years. J.M. testified that as she grew older, Perez-Nieto began engaging in conduct that made her uncomfortable. She described repeated instances in which he placed his hand on her thigh while they were in a vehicle and attempted to move his hand toward her inner thigh, which she resisted by blocking or pushing his hand away.

J.M. also recounted other incidents occurring over a span of time, including an encounter in which Perez-Nieto touched her on or near the upper thigh while entering through a window, and repeated hugs during which his hands would slide downward in a manner she perceived as

inappropriate. She further testified that, on at least two occasions while she was washing dishes, Perez-Nieto placed his hands on the sides of her chest, which she attempted to deflect.

One of the charged counts arose from a specific incident on August 19, 2023. On that date, Perez-Nieto arrived at the residence while J.M.'s mother was away. J.M. accompanied him on a short drive to a nearby gas station. During the drive, J.M. testified that Perez-Nieto placed his hand on her upper thigh and attempted to move it inward while she pushed his hand away. After returning home, J.M. contacted her mother, who returned to the residence and observed J.M. in a visibly upset state.

The State charged one count based on the August 19, 2023, incident and a second count covering the time period from November 2019 through August 2023. The case proceeded to a jury trial in January 2025. Following a two-day trial, the jury found Perez-Nieto guilty of both counts of indecent contact with a child and acquitted him of a separate simple assault charge. After the verdicts, Perez-Nieto filed a motion for new trial and a motion in arrest of judgment. The district court denied both motions.

The district court subsequently entered judgment and sentence. The court imposed an indeterminate term of incarceration not to exceed two years on each count, ordered the sentences to run consecutively, and imposed fines, surcharges, and sex-offender-registration requirements. The court also imposed a special sentence pursuant to Iowa Code section 903B.2 and entered a no-contact order protecting J.M.

Perez-Nieto now appeals. On appeal, he challenges the sufficiency of the evidence and raises claims concerning the admission of certain testimony at trial.

## STANDARD OF REVIEW

Sufficiency of the evidence claims are reviewed for the correction of errors at law. *State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). The court reviews a vouching complaint for an abuse of the trial court's discretion. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). An abuse of discretion occurs when the court's decision is clearly untenable or unreasonable. *Id.*

## DISCUSSION

### I.  Sufficiency of Evidence

When reviewing sufficiency of the evidence claims, we "view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017) (cleaned up). We determine evidence is sufficient when the record contains substantial evidence to support the conviction. *Id.* "Substantial evidence exists when the evidence would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018) (cleaned up) .

Perez-Nieto contends the evidence—even as described by the victim—was insufficient to amount to indecent contact. The State counters that the victim's testimony provided direct evidence of the required touching and that the jury was entitled to believe it and draw reasonable inferences from it. We agree.

More specifically, the victim testified that she told Perez-Nieto she and her younger brother were hungry and asked him to take them to a gas station to buy food. Perez-Nieto agreed to go but allowed only J.M. to accompany

him. J.M. testified that as he drove, "he puts his hand on my thigh, per usual." She further explained:

> A. Well, we're just talking and I always have that, like, I always do that thing with my hands where I push you away and I close my thighs shut as much as I can. I've always done that, but we're just talking and then we get there. It was a very short drive.
>
> Q. Okay. And I want to go back to this touch. When he first puts his hand on your thigh, where on your thigh is his hand?  A. On my upper thigh.
>
> Q. Okay.  A. Just on top.
>
> Q. Okay. Just directly on top of your upper thigh. What does he do with his hand?  A. Well, he's trying to go more in my thigh. He's sliding a bit more, but I'm shoving his hand away.
>
> Q. Okay. So he's—is he moving his hand towards where your thighs meet again?  A. Yes.
>
> Q. Where are his fingers as he's moving his hand in that direction? A. He's always done this thing where he tries to, like, put his fingers between my thighs and separate them with one hand because the other hand he's driving but—yeah.
>
> Q. And how do you know he's trying to separate your thighs? A. Because of his hand actions and my thighs would separate just a little bit, but I'd shut them right away. Yeah.
>
> Q. Okay. What could you feel about his hand or his fingers that made you think he was trying to separate your thighs?  A. A lot of force. Can I do the action? A lot of force this way going like this.
>
> Q. You're showing, like, a prying apart motion.  A. What he would do—fingers and he would force a lot. I'm shaking but—yeah.

We agree with the State that this testimony was sufficient to establish contact between Perez-Nieto's hand and J.M.'s inner thigh. Although she said he began by touching the top of her thigh and she was actively trying to prevent him from touching her where her "thighs meet," J.M. testified that

her thighs "would separate just a little bit" as he used "a lot of force," demonstrating a prying motion. As the State reasons in its brief:

> To somewhat successfully pry open his stepdaughter's legs from his position in the driver's seat of the car, the jury could, and did, reasonably conclude that Perez-Nieto's hand necessarily touched her inner thigh.

J.M. also described Perez-Nieto twice touching the side of her chest when she was washing dishes. She testified that she would attempt to thwart his touches by blocking him with her arms. She demonstrated her resistance by placing "her forearm or biceps close to her body and mak[ing] swimming or flying motions away from her body." When asked directly if she was referring to her breasts when she testified that the defendant would touch "the sides over [her] chest," she replied, "Yes."

Perez-Nieto's arguments largely ask us to reweigh the evidence. But the jury was entitled to evaluate and determine what weight to give J.M.'s testimony. *See State v. Jones*, 967 N.W.2d 336, 343 (Iowa 2021). From the evidence presented, the jury could reasonably infer the above conduct was knowing and voluntary.

## II. Witness Vouching

Perez-Nieto argues the State's forensic interviewer improperly vouched for the victim's credibility by testifying that children who report sexual abuse are generally reliable, that partial disclosures do not undermine accuracy, and that victims often maintain relationships with their abusers—thereby indirectly telling the jury the victim should be believed. At trial, the forensic interviewer testified to several questions that Perez-Nieto objected to on the basis of impermissible vouching:

Q. [Y]ou have testified essentially to disclosure is a process and no one single interview can always capture every detail. In your experience are partial disclosures less reliable simply because they're partial?

DEFENSE COUNSEL: Objection. Vouching.

THE COURT: Overruled.

A. No. Taking it out of the context of abuse, thinking about giving, like, a vague or a partial statement to one person. So if I were to tell my boss I went to this store and then I tell my friend I went to Target and I bought XYZ, that doesn't make my statement to my boss inaccurate. It just lacks detail.

. . . .

Q. And similarly does the research show whether or not it's common that children might want to remain in contact with their abuser?

DEFENSE COUNSEL: Objection. Vouching.

THE COURT: Overruled. Go ahead.

A. The research would support that they would maintain a relationship or maintain in contact. I think that's what you asked.

. . . .

Q. And with regard to how the disclosure occurred, you talked about kind of a spectrum of details or level of details, might be a better term, as a forensic interviewer, does the research say anything about whether nearly the number of details or the amount of details equates or doesn't equate to a credible disclosure?   A. Yes. So the research would support—

DEFENSE COUNSEL: Objection. Vouching.

THE COURT: Overruled. Go ahead, ma'am.

A. The research would support that regardless of the quantity of details, the information that a child does provide can be very accurate. One area that the research has focused on for that would be young children, so when we're talking about preschoolers ages, like, three to five,—

DEFENSE COUNSEL: Objection as to relevance.

THE COURT: Overruled.

A. —they are more likely to provide less detail just because of their age and their developmental level of understanding, but that doesn't mean that information that they do provide is inaccurate. The information that they're able to and do provide can still be very accurate.

Iowa Rule of Evidence 5.702 governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Iowa R. Evid. 5.702.

In a trio of decisions, the Iowa Supreme Court clarified the very thin line between admissible expert testimony regarding abuse and inadmissible testimony constituting opinion on credibility or vouching. In *State v. Dudley*, the court found an expert's testimony that "a child's physical manifestations or symptoms are consistent with sexual abuse trauma" was impermissible indirect vouching. 856 N.W.2d at 677. *State v. Jaquez* held an expert's opinion that a child's demeanor was "completely consistent with a child who has been traumatized" was also impermissible vouching. 856 N.W.2d 663, 665 (Iowa 2014). However, the court was careful to note that "[w]e allow an expert witness to testify generally that victims of child abuse display certain demeanors." *Id.* at 666. Finally, in *State v. Brown*, a doctor's report stating a child's disclosure of sexual abuse was "significant" and that an "investigation is clearly warranted" was impermissible evidence. 856 N.W.2d 685, 688–89 (Iowa 2014).

The challenged testimony here addressed general patterns in how children disclose abuse and respond to it. It did not state that *this* victim was truthful, nor did it offer an opinion on her credibility. Instead, it provided context for behaviors the jury might otherwise misunderstand. That distinction matters. The jury remained responsible for determining credibility. The expert did not tell the jury whom to believe or suggest that the victim's account was accurate. The testimony explained general dynamics; it did not resolve the ultimate question, nor did it tie the general dynamics to the victim with the types of "consistent with" language deemed impermissible in *Dudley* and *Jaquez*. 856 N.W.2d at 677; 856 N.W.2d at 665.

An expert may testify generally about victim behavior, including delays in reporting events and why recollection may seem inconsistent, just not the validity of the behaviors of *this* victim. *State v. Tjernagel*, No. 15-1519, 2017 WL 108291, at *4 (Iowa Ct. App. Jan. 11, 2017) (discussing recent vouching decisions). "In deciding whether expert responses fall on the right or wrong side of the line, our courts have focused on how closely the responses were tied to the facts of the particular case." *Simpson v. State*, No. 15-1529, 2017 WL 1735615, at *5 (Iowa Ct. App. May 3, 2017). Here, the testimony was sufficiently general and not tied by the witness to the particular facts of this case. The application of the witness's testimony to the facts at hand was left to the jury. The district court acted within its discretion in admitting the testimony for that limited purpose.

**AFFIRMED.**